**Paul Shatkus, Plaintiff-Appellee, v. Checker Taxi Company, Inc., Defendant-Appellant.**

Gen. No. 52,435.

First District.

June 6, 1969.

Jesmer and Harris, Gerrard and Gerrard, of Chicago (Michael A. Gerrard, Allen S. Gerrard and Julius Jesmer, of counsel), for appellant.

Frank J. Mackey, Jr., of Chicago (Louis P. Miller, of counsel), for appellee.

MORAN, J.

Plaintiff brought this action in the Circuit Court of Cook County seeking damages from the Checker Taxi Company for injuries sustained when attempting to board a cab of the defendant. He claims that while he was en-

tering defendant's taxicab, it started into motion before he was safely inside and failed to stop when its driver knew, or should have known, that he was being dragged down the street by the cab. The defendant admitted operation of the cab but denied that a carrier-passenger relationship existed, contending that plaintiff attempted to enter said taxicab for the purpose of committing an assault and inflicting bodily harm upon the driver of the cab.

The jury returned a verdict in favor of the plaintiff in the amount of $43,500. Defendant moved for a judgment notwithstanding the verdict or in the alternative for a new trial. The trial court denied the motion and granted a new trial unless the plaintiff would remit $8,500 from the verdict. When plaintiff consented to the remittitur, the court entered a judgment for $35,000, and denied defendant's post-trial motion for a new trial. We affirm.

The accident in question occurred shortly after 7:00 p. m. on July 27, 1959, near the northwest corner of Archer and Halsted Streets in the City of Chicago. Plaintiff testified that he had just stepped out of a restaurant and was standing on the curb waiting for a bus, when he signaled a Checker cab. The cab stopped about five feet past him and the driver opened the left rear door. Plaintiff grabbed the left rear door handle, put one foot into the cab and told the driver to take him to Archer and Kedzie, whereupon the driver said "Okay." Before the plaintiff was completely in, the cab suddenly took off and the right side of plaintiff's head went against the door. He was rendered unconscious and did not remember anything after that until he awakened later that night in the hospital. Plaintiff also testified that he never saw the cab driver before the accident, that the cab driver was never outside of the cab, and that there was nothing obstructing the right side of the cab, but he went to the left side because he saw that door open.

3

Jerry Koon testified on behalf of the plaintiff that he was buying gas at a filling station located on the southwest corner of Archer and Halsted Streets. As he was standing by the side of his car, he heard some talking across the street and looked in the direction of the voices. Although he did not recognize any words, he saw the plaintiff standing by the open left rear door of the Checker cab talking to the driver who was seated inside the cab. At this same moment, the cab started to move while plaintiff was half in and half out. The cab took off fast, approximately thirty miles per hour, with the plaintiff hanging on for about one hundred feet and then falling to the pavement. The cab, which was a yellow and green Checker cab with numbers 4747, continued on Archer Street without returning to the scene of the accident. Koon estimated that the cab was about sixty feet from where he was standing when he first noticed it and the plaintiff. He had no idea how long the cab was at this location, because he did not see the cab until his attention was diverted in that direction by voices. After plaintiff had fallen to the pavement, Koon immediately went to his aid and discovered that he was unconscious and there was blood on his face. Koon parked his car in the street so as to protect the unconscious plaintiff from the oncoming traffic and stayed at the scene of the accident until the police arrived and he then gave them a statement.

Patricia Lukas testified on behalf of defendant that she worked in a restaurant on the corner of Archer and Halsted. As she was leaving the restaurant and going to a tavern next door, she passed two men on the sidewalk whom she did not know. She had her back to these men and was in the doorway of the tavern when she heard a loud slap. When she turned around, the driver started walking toward the cab and plaintiff just stood there and said, "Did you see that? Did you see him hit me? I ain't going to let him get away with it." After

4

hearing these statements, she then noticed that the driver was already inside the cab and starting the motor, when the plaintiff started to go around the cab from the rear and had reached the left rear door when the cab started to move forward. Plaintiff had tried to open the left rear door, but had not succeeded when the cab started to move. Since the left side of the cab was facing the street, she could not tell whether plaintiff was running with or hanging onto the cab. The cab continued on after plaintiff had fallen. She knew it was a Checker cab but did not notice the number. She immediately went back into the restaurant. On the following day, a man from Checker Cab came into the restaurant and took her statement. This was the only statement she had given concerning the accident.

Herman Fetzner testified on behalf of the defendant that he was a driver for the defendant and was driving Cab No. 4747 on the date of the accident; that he never operated his cab on that day in the vicinity of Archer and Halsted; that he never saw plaintiff on this day; and that his daily log sheet did not record any pickups at Halsted and Archer.

Defendant contends that the trial court erred in not granting it a judgment notwithstanding the verdict or in the alternative that the trial court erred in not granting a new trial because the verdict was against the manifest weight of the evidence.

■■ This case involves conflicting versions of how the accident happened and therefore the trial court properly left the dispute to the jury. Under the facts in this case the trial judge could not say that the evidence, when considered in the view most favorable to the plaintiff so overwhelmingly favored the defendant that no contrary verdict could ever stand and therefore committed no error in refusing to direct a verdict at the close of all of the evidence and in refusing a motion for a judgment notwithstanding the verdict. Pedrick v. Peoria

& Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967).

■■■■ Nor do we find that the verdict and judgment below are against the manifest weight of the evidence. The opposite conclusion is not clearly evident and therefore this court will not substitute its judgment for that of the jury, even though we might feel that another conclusion would be more reasonable when we find there is, as here, an evidentiary basis for the verdict. Manifest means clearly evident, clear, plain, indisputable. Brayfield v. Johnson, 62 Ill App2d 59, 210 NE2d 28; Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 72 NE2d 705.

Defendant also contends that plaintiff committed reversible error by the misconduct of his attorney in the improper use of a police report in the redirect examination of Officer Craven when plaintiff's counsel asked:

> "Q. Officer, did you ask Mr. Fetzner, 'Do you wish to make a statement of your own free will, without any promise of remuneration or reward having been made to you?' and did he say, 'No?' "

The trial judge sustained an objection to this question and instructed the jury to disregard it. However, defendant states in his brief that Mr. Mackey (plaintiff's counsel) read this question and answer from the documents having been previously identified as Chicago Police Reports in the sight and presence of the jury.

The record does not sustain this contention.

> Mr. Jesmer: "But you cannot, Your Honor, take that instrument like Mr. Mackey did and read what was in there."

> The Court: "Well, he didn't read it."

> Mr. Jesmer: "Didn't he say that his name was— does it refresh his recollection that his name was Herman Fetzner, his age, address, and so on? He

read from it and he said that refreshed his recollection."

The Court: "Oh, no."

We see no reversible error in this incident.

■ Defendant contends that the plaintiff's counsel was also guilty of prejudicial misconduct during his cross-examination of defense witness Fetzner when the following incident occurred:

Mr. Jesmer: "I wish the record to show that plaintiff's counsel, Mr. Mackey, is holding his exhibit No. 7 in such a manner that it is quite obvious as to what it is to everybody, that he is reading those questions from that exhibit No. 7 that is not in evidence."

The Court: "The record may so show. Let me say to you, Mr. Mackey, your exhibit No. 7 is not received in evidence. It is improper conduct and I want it stopped now."

Mr. Mackey: "Very good, sir. Judge, lest I ask an improper question, may I be heard briefly?"

Out of the presence of the jury, Mackey argued that he should be allowed to impeach Fetzner by the use of this exhibit. At the end of the conference the trial judge admonished plaintiff's lawyer not to use the report any more and plaintiff's counsel made no further reference to the exhibit.

This was not the only instance when an improper use of the police report was attempted during the trial. A short time before this incident defendant's counsel was cross-examining Officer Craven and asked him:

"Q. All right, sir. Look in those records that were handed to you and tell us where is there a recording of your having gone, for example, to the

gasoline station or to this place or the other to look for witnesses?"

Mr. Mackey: "I will object to this."

The Court: "The objection will be sustained. The Jury is instructed to disregard the last question."

In North Chicago St. R. Co. v. Cotton, 140 Ill 486, 29 NE 899, our Supreme Court said at 503:

"But when the record comes to this court bearing with it the official sanction of the trial judge, very different questions are presented. Every reasonable presumption must be indulged in that the trial judge has performed his duty and has properly exercised the discretion vested in him, and that he has permitted no misconduct of counsel materially prejudicial to the opposite party to intervene, unless such misconduct and its prejudicial nature are clearly shown by the record."

The record discloses that both parties were represented by able counsel who were constantly maneuvering for advantage and that the able trial judge was in control of the situation. We see no prejudicial misconduct clearly shown by this record.

The plaintiff has questioned the propriety of the remittitur of $8,500 (c 110, Ill Rev Stats (1965) § 68.1 (7)). Under the evidence we do not consider this was an abuse of discretion by the trial judge.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.