WILLIAM D. HELDENBRAND, Plaintiff-Appellee, v. ROADMASTER
CORPORATION, Defendant-Appellant.

Fifth District    No. 5—95—0018

Opinion filed February 1, 1996.

David E. Schaper, of Roadmaster Corporation, of Rosemont, and John D. Finerty, Jr., of Krukowski & Costello, S.C., of Milwaukee, Wisconsin, for appellant.

Gail Gaus Renshaw and Lee W. Barron, both of Lakin Law Firm, P.C., of Wood River, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On October 3, 1991, plaintiff, William D. Heldenbrand (Heldenbrand), was terminated from his employment with defendant, Roadmaster Corporation (Roadmaster). Heldenbrand alleged that his termination was in retaliation for exercising his rights under the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)). Following a bench trial, the court awarded Heldenbrand $200,000 for lost wages, $50,000 for emotional pain and suffering, and $750,000 as punitive damages. Defendant appeals on three bases: (1) the evidence was insufficient as a matter of law to sustain a judgment finding that, but for plaintiff's filing a workers' compensation claim, he would still be employed by Roadmaster; (2) the trial court's methodology in awarding compensatory damages was improper; and (3) the evidence was insufficient to support an award of punitive damages. We affirm the judgment in plaintiff's favor but reduce the compensatory damages.

William Heldenbrand was employed by Roadmaster and its predecessor for 25 years before he was discharged on October 3, 1991. During his employment, Heldenbrand had been injured at work several times. These injuries included a severed finger, two crushed fingers, a crushed foot, a slipped disk in his back, and several wrist injuries which resulted in two surgeries. Heldenbrand had previously received workers' compensation for these injuries. He had always returned to the company within one year, initially working on "restricted duty"—a program designed to return employees recovering from any type of injury to work in a reduced capacity consistent with their capabilities and the work available—and then returning to his prior positions.

In August of 1990, Heldenbrand injured his wrist for the second time. When he returned to work, Heldenbrand was placed on restricted duty. Heldenbrand took time off work between August 14 and September 4, 1990, and then returned to his restricted position. On September 10, 1990, Heldenbrand took an indefinite leave from Roadmaster in order to recover from his wrist injury. During all of these absences from work, Heldenbrand received workers' compensation benefits.

In July or August 1991, Heldenbrand's doctor sent Roadmaster a note that released Heldenbrand to return to restricted duty with no lifting in excess of five pounds. At that time, Roadmaster's nurse went to Heldenbrand's former department, looked at the jobs that were available, identified the types of activities required for those jobs, and determined that Heldenbrand could not perform any of them without violating his doctor's restrictions.

On September 19, 1991, the company doctor sent a letter to Roadmaster's insurance carrier indicating that Heldenbrand's anticipated release from his care was October 9, 1991. On October 3, 1991, Roadmaster fired Heldenbrand by letter for violation of the company's leave-of-absence policy, which was set forth in the "Last Best Offer For An Agreement Between Roadmaster Corporation And Laborers' Local 504" (Last Best Offer Agreement). This Last Best Offer Agreement contained Roadmaster's basic employment policies and was posted on a company bulletin board. Both parties agree that the Last Best Offer Agreement governs the time period involved in this dispute.

Article 13 of the Last Best Offer Agreement, titled "Leave of Absence," states in relevant part:

"B. In the event of illness, accident or pregnancy, any permanent employee who submits medical proof of disability shall be given a Sick Leave of Absence without pay. Such absence shall not exceed the lesser of the employee's total length of service or six (6) months. An extension of six (6) months may be mutually agreed to by the Company, employee and the Union."

Roadmaster contends that Heldenbrand's absence from September 10, 1990, to his scheduled return date of October 9, 1991, enabled Roadmaster to terminate Heldenbrand for violating the policy prohibiting a 12-month absence. Heldenbrand argues that the leave-of-absence policy applies only to sick leave, that he was not absent on sick leave, and that he was governed by the company's rules for workers' compensation injuries, which do not include the six-month/ one-year absence provision. More specifically, Heldenbrand claims that Roadmaster fired him in retaliation for exercising his rights under the Illinois Workers' Compensation Act.

## RETALIATORY DISCHARGE

Roadmaster first argues that the evidence is insufficient as a matter of law to sustain a judgment finding that, but for the fact that plaintiff filed a workers' compensation claim, he would still be employed by Roadmaster.

■ Generally, an at-will employee may be terminated at any time, for any cause or for no cause. (*Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, 159, 601 N.E.2d 720, 728.) In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181, 384 N.E.2d 353, 357, Illinois recognized a cause of action for retaliatory discharge and created a limited exception to this general rule. In *Kelsay*, an employee was discharged in retaliation for filing a workers' compensation claim. The Illinois Supreme Court created a cause of action for retaliatory discharge to uphold and protect public policy against unlawful interference with

employees' rights under the Workers' Compensation Act. (*Kelsay*, 74 Ill. 2d at 181, 384 N.E.2d at 357.) *Kelsay* removed injured employees from the "no-win" position of seeking the statutory remedy for their injuries and losing their jobs or keeping their jobs and sacrificing their statutory remedies.

A retaliatory discharge claim requires a showing: (1) that an employee has been discharged; (2) that the discharge was in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy. (*Hartlein*, 151 Ill. 2d at 160, 601 N.E.2d at 728.) Causation is not established if the basis for the discharge is valid and nonpretextual. (*Slover v. Brown* (1986), 140 Ill. App. 3d 618, 621, 488 N.E.2d 1103, 1105.) In other words, an employer is not liable for retaliatory discharge solely because the employer fired an employee who has previously filed a workers' compensation claim. The employee must affirmatively show that the discharge was to retaliate against him for exercising the protected right. *Dixon Distributing Co. v. Hanover Insurance Co.* (1993), 244 Ill. App. 3d 837, 845, 612 N.E.2d 846, 852, *aff'd* (1994), 161 Ill. 2d 433, 641 N.E.2d 395.

A retaliatory discharge action is somewhat analogous to a claim under Title VII of the Civil Rights Act of 1964. Title VII provides, in pertinent part:

> "It shall be unlawful employment practice for an employer *** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." (42 U.S.C.A. § 2000e—2(a)(1) (West 1994).)

The Illinois Supreme Court's recognition of the necessity of protecting employees from their employers by creating a cause of action for retaliatory discharge is akin to Congress' purpose in enacting Title VII to protect employees from unlawful discrimination based on race and sex.

In this case, Heldenbrand was discharged by Roadmaster after 25 years of service. Heldenbrand had filed a workers' compensation claim for a work-related injury and was on a physician-authorized leave from Roadmaster. The parties agree that it is a violation of public policy to terminate an employee for exercising a statutory right to receive workers' compensation. The only factual dispute was the reason for Heldenbrand's termination. The trial court concluded that Heldenbrand was terminated for exercising his right to workers' compensation.

Ostensibly, Heldenbrand's discharge was for Heldenbrand's violation of the one-year-absentee provision, but Heldenbrand also

established that the industrial accident portion of the Last Best Offer Agreement had absolutely no time limitation that would allow his discharge and that, after his discharge, Roadmaster hired 600 new employees while rejecting a minimum of five applications from Heldenbrand.

Roadmaster defended this case solely on the causation issue, and it argued both at trial and on appeal that all employees who were absent more than one year were discharged. Defendant submitted evidence to support its argument, and if the trial court had accepted the defendant's argument and proof, it could have properly ruled in defendant's favor because defendant presented evidence of a nonpretextual reason for its act.

■ There was, however, additional proof before the trial judge. Although Roadmaster contends that all employees who were absent from their jobs for more than one year were terminated without regard to whether they were off work due to an industrial accident or due to an illness, the Last Best Offer Agreement clearly distinguishes between employees who are off on sick leave and employees who are off because of work-related injuries.

Roadmaster had two distinct policies for dealing with employee absences. One policy covered sick leave and did not make any reference to, or provision for, industrial injuries. This section provides that employees who are on leave in excess of six months (with a possible six-month extension if agreed to by the parties) will be terminated. The second policy, article 27, covers industrial injuries, and it does not contain either a termination provision or a limitation on the time an employee could be absent for an injury covered by workers' compensation:

"A. Employees who are injured while at work and are unable to complete the remainder of their shift will receive their regular straight-time base pay to the end of their shift.

B. If an employee is temporarily or permanently disabled to such a degree that he is unable to perform his regular job, the Company will make every reasonable effort to transfer him to a job which is within his medically approved physical capabilities. The Company may discipline an employee for just cause who refuses to accept an assignment; such discipline may be reviewed through the grievance and arbitration procedure.

C. An employee injured on the job must report a compensable injury prior to the end of the shift on which the injury occurred. Failure to timely report the injury may result in discipline up to and including discharge."

In addition, Heldenbrand presented evidence that Roadmaster's treatment of him was not consistent with its leave-of-absence policy.

Heldenbrand was not terminated after a six-month absence. In addition, Heldenbrand was not contacted after six months to obtain his agreement to an extension. Heldenbrand was not paid benefits consistent with the leave-of-absence policy. Instead, Heldenbrand's benefits were consistent with the Last Best Offer Agreement's industrial accident section.

Roadmaster did not terminate Heldenbrand automatically after 12 months, which would have been consistent with its leave-of-absence policy. Heldenbrand was on leave for more than one year before he was terminated, and, in fact, Nurse Cowlings testified that it was a report from Heldenbrand's workers' compensation physician that prompted her to check the amount of time Heldenbrand had been absent. Finally, Roadmaster gave no notice to Heldenbrand, either directly or indirectly, that there was a 12-month maximum absence. Had Heldenbrand received notice of this maximum, he and his physician might well have structured Heldenbrand's rehabilitation program differently. Not only did Roadmaster violate its written employee policy by applying the leave-of-absence policy's 12-month maximum to a person on leave for an industrial injury, but the timing of Heldenbrand's release also supports the trial court's conclusion.

In addition, a Roadmaster employee admitted at trial that Heldenbrand was fired for exercising his right to receive workers' compensation for an industrial injury. Nurse Cowlings, an occupation health nurse at Roadmaster, testified for Roadmaster. On cross-examination, Nurse Cowlings stated that Heldenbrand was terminated because of his workers' compensation leave. Immediately after giving that response, Nurse Cowlings was questioned by the defense attorney and contradicted this statement. The trial court is in a superior position to determine the credibility of the witnesses, and great deference should be given to its findings on appeal. (*Shelby County Housing Authority v. Thornell* (1986), 144 Ill. App. 3d 71, 76, 493 N.E.2d 1109, 1112.) When reviewing a bench trial, the reviewing court will not disturb a trial court's findings unless they are against the manifest weight of the evidence. (*Hentze v. Unverfehrt* (1992), 237 Ill. App. 3d 606, 609-10, 604 N.E.2d 536, 539.) The judge was able to observe Nurse Cowlings' demeanor and may have concluded that the truthful answer was the one given on cross-examination rather than the one given on redirect.

Based on the foregoing reasons, we conclude that the court's holding that Roadmaster discharged Heldenbrand in retaliation for exercising his statutory right to workers' compensation is not against the manifest weight of the evidence.

Before we proceed to the next issue, we will address Roadmaster's argument that the trial court applied the wrong rule of law to this case. Roadmaster argues that the trial court concluded that Roadmaster's absentee policy, when applied to Heldenbrand, constituted a retaliatory discharge action. The order reads in pertinent part:

"The Court finds that the discharge of the plaintiff, based on a violation of a Leave of Absence Policy[,] clearly established in the eyes of this Court a violation of [section 4(h) of the Workers' Compensation Act (820 ILCS 305/4(h) (West 1992))] and, therefore, a discharge of the plaintiff contrary to those provisions."

We do not agree with Roadmaster's interpretation of the order. It is apparent from a plain reading of the order that the court intended the above language to mean that, although Roadmaster argued that it discharged Heldenbrand for violating its absentee policy, the inconsistencies discussed earlier in this opinion undermine that argument. Therefore, we conclude that the trial court correctly applied Illinois retaliatory discharge law.

## COMPENSATORY DAMAGES

Roadmaster's second argument is that the trial court erred in the amount of compensatory damages it awarded. The trial court awarded Heldenbrand $200,000 "for present cash value of lost wages." The order does not specify how the compensatory damages were calculated, and Roadmaster argues that there is no rational basis in the record to support the court's conclusion. Roadmaster argues that this error entitles it to a new trial on damages.

The purpose of compensatory damages is to compensate the plaintiff for damages sustained, not to punish the defendant or to award a windfall to the plaintiff. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 523, 546 N.E.2d 499, 506.) The parties stipulated that Heldenbrand's annual wage rate prior to going on leave in 1990 was $12,900. The parties also stipulated that Heldenbrand intended to retire at age 65.

■ The trial court's order does not reveal how it concluded that $200,000 was an appropriate amount of damages. The evidence reflects, however, that plaintiff would have earned $167,700 for the 13 years he would have worked from his termination to his normal retirement date. The amount of $167,700 does not take into account any discounting, but of course the trial court was not presented any evidence of an appropriate discount rate. The amount of $167,700 also does not include any raises plaintiff might have received during the last years of his employment, but of course the trial court was not presented with any evidence of raises either. Since the trial

court's order does not contain the reasons for the $200,000 award, we feel constrained to reduce it to $167,700, an amount clearly supported by the record. Therefore, under our power under Supreme Court Rule 366 (155 Ill. 2d R. 366), we reduce the award for lost wages to $167,700.

Heldenbrand was also awarded $50,000 for emotional distress. Roadmaster argues that the court erred in finding it liable for damages for emotional distress. However, during oral arguments Roadmaster's attorney conceded that the $50,000 award would be an appropriate sum if this court were to affirm the trial court's finding of liability. Therefore, we need not discuss this point any further.

## PUNITIVE DAMAGES

■ Roadmaster's final argument is that the record is insufficient to award punitive damages. Punitive damages may be granted where torts are committed with fraud, actual malice, or deliberate violence or oppression or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359.) Punitive damages are designed as a punishment and as a warning and example to deter the defendant and others from committing similar offenses in the future. *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 357.

In this case, the court awarded Heldenbrand $750,000 in punitive damages. Roadmaster argues that this damage award is in error because it did not treat Heldenbrand, or other employees absent on workers' compensation leave, differently from employees on "sick leave." In other words, Roadmaster contends that it did not target employees on workers' compensation leave, specifically Heldenbrand, for termination.

■ After reviewing the record, we hold that the award of punitive damages in this case is not against the manifest weight of the evidence. Although Roadmaster argues that it consistently applied its leave-of-absence policy to all absent employees, whether their absence was due to an illness, a pregnancy, or an industrial accident, the record is full of inconsistencies on this point. It is appropriate to award punitive damages in a retaliatory discharge case when the trier of fact concludes that an employee was fired for filing a workers' compensation claim. (*Kelsay*, 74 Ill. 2d 172, 384 N.E.2d 353.) The supreme court noted in *Kelsay*:

> "In the absence of the deterrent effect of punitive damages there would be little to dissuade an employer from engaging in the practice of discharging an employee for filing a workmen's

compensation claim. \*\*\* [P]unitive damages must be permitted to prevent the discharging of employees for filing workmen's compensation claims." *Kelsay*, 74 Ill. 2d at 186-87, 384 N.E.2d at 359.

The supreme court's concern for deterrence is equally present in this case. The record supports the trial court's conclusion that the facts presented in this case are inconsistent with Roadmaster's stated reason for firing Heldenbrand. In addition, a Roadmaster employee admitted that Heldenbrand was fired for exercising his statutory right to receive workers' compensation for an industrial accident.

In addition to the evidence supporting the trial court's conclusion that Roadmaster discharged Heldenbrand for filing a workers' compensation claim, there was evidence to support a finding that Roadmaster refused to rehire him, despite Heldenbrand's persistent attempts to regain employment at Roadmaster. Immediately following receipt of Roadmaster's letter of termination, Heldenbrand met with Donald Duckworth, Roadmaster's industrial relation manager, who had sent the letter of termination. Heldenbrand asked why he was fired and was simply shown a copy of the absentee policy. Heldenbrand visited Mr. Duckworth a second time in an attempt to be rehired. He was accompanied by the secretary-treasurer of the union. Mr. Duckworth told Heldenbrand that he was a good worker, but Duckworth explained that Heldenbrand's absence violated the company's leave-of-absence policy. Mr. Duckworth did not rehire Heldenbrand.

Heldenbrand was told that the only way he could reapply with Roadmaster was through a job service. Heldenbrand sent five applications to Roadmaster over a year and a half. Roadmaster did not rehire Heldenbrand or respond in any way to his applications, despite the fact that during that time period Roadmaster hired over 600 employees.

The failure to rehire or recall an employee after a workers' compensation injury is evidence that the employer acted wilfully. (*Motsch v. Pine Roofing Co.* (1989), 178 Ill. App. 3d 169, 533 N.E.2d 1.) In *Motsch*, a roofing contractor was wrongfully terminated by his employer after initiating a workers' compensation claim. Evidence introduced by the plaintiff disclosed that at the close of the seasonal slowdown, defendants employed 10 to 14 new employees but refused to rehire plaintiff even though defendants had never complained about the roofing contractor's work performance. The jury found that the defendant acted wilfully in failing to rehire the plaintiff. (*Motsch*, 178 Ill. App. 3d at 177.) We hold that the record supports the judgment granting Heldenbrand punitive damages.

■ Roadmaster argues that the $750,000 punitive-damage award is excessive and therefore violates the due process requirement of the United States Constitution and the Illinois Constitution. Although there is no bright line by which courts of review can separate proper awards from excessive awards, there are three factors which courts have taken into consideration when evaluating punitive-damage awards:

"(1) the nature and enormity of the wrong; (2) the defendant's financial status; and (3) the defendant's potential liability in other cases." (*Howard v. Zack Co.* (1994), 264 Ill. App. 3d 1012, 1028, 637 N.E.2d 1183, 1194, citing *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 711, 450 N.E.2d 1199, 1207-08.)

In this case, the court's order, when discussing punitive damages, said this:

"As to the issue of punitive damages, this Court finds that the pattern of conduct of the defendant, in systematically terminating workman compensation claimants who fell within the framework of their policy, and specifically intending the plaintiff, constituted the degree of culpability that warrants the imposition of a sanction that is intended to punish and deter. Wherefore, this Court finds that the amount of $750,000 is an appropriate amount as and for punitive damages ***."

■ We find that the court considered all of the recommended factors used by courts to evaluate punitive-damage awards. In the order, the judge was concerned with punishing Roadmaster for improperly discharging Heldenbrand and with deterring Roadmaster from similar behavior. The amount of punitive damages awarded was three times the original compensatory-damage amount. Although the newly implemented Civil Justice Reform Amendments of 1995 (Act) are not applicable to this case, it is instructive that the Act contains a punitive-damage limit of three times the compensatory-damage award. (Pub. Act 89—7, § 15, eff. March 9, 1995 (adding 735 ILCS 5/2—1115.05(a)).) The trial court's punitive-damage award is consistent with Illinois case law and the new Civil Justice Reform Amendments.

The punitive-damage award is also within the treble-damage limits of the Illinois Antitrust Act (740 ILCS 10/7 (West 1992)) and Federal antitrust laws (15 U.S.C.A. § 15 (West 1973 & Supp. 1995)). Furthermore, awards in multiples of the actual damages have been approved by the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10a (West 1994)). (*Ekl v. Knecht* (1991), 223 Ill. App. 3d 234, 585 N.E.2d 156.) By referring to these statutes we do not suggest that punitive damages should be limited to any

multiple of compensatory damages, but only that these statutes are some indication of the Federal and Illinois legislative policy on punitive-damage awards that are in that range. We conclude that the trial court's punitive-damage award was not excessive and did not violate the due process clause of the United States Constitution or the Illinois Constitution.

For the foregoing reasons, we affirm as modified.

Affirmed as modified.

RARICK and GOLDENHERSH, JJ., concur.