GLEN HOLLOWELL, Plaintiff-Appellee, v. WILDER CORPORATION OF DELAWARE, Defendant-Appellant.

Fifth District    No. 5—99—0293

Opinion filed January 31, 2001.

Patrick F. Schaufelberger, of Miller-Schaufelberger-Bauer Law Offices, Ltd., of Vandalia, for appellant.

Jack Johnston, of Burnside, Johnston, Choisser & Sheafor, of Vandalia, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Wilder Corp. of Delaware, a Delaware corporation (defendant), appeals the jury trial verdict and judgment entered on January 26, 1999, as well as the March 19, 1999, trial court's denial of defendant's post-trial motions. On appeal, defendant asserts four issues for review: (1) whether the trial court erred in denying defendant's motion for judgment notwithstanding the verdict as to punitive damages, (2) whether the trial court erred in denying defendant's motion for new trial as to compensatory damages, (3) whether the trial court erred in denying defendant's motion for a new trial as to punitive damages, and (4) whether the trial court erred in denying defendant's motion for remittitur. A timely notice of appeal was filed on April 19, 1999. For the reasons that follow, we affirm.

## I. FACTS

On October 5, 1996, Glen Hollowell (plaintiff) was a farm laborer working for defendant on its Vandalia farm. On that day, plaintiff

injured his back while riding a tractor over a ditch in the fields. Plaintiff informed his immediate supervisor, farm manager Kevin Hollowell (his brother), and proceeded home. While at home, the pain in his back was so severe that he went to the emergency room. He remained in the hospital for a few days and did not return to work for three weeks. On October 29, 1996, plaintiff returned to work under physician-ordered restrictions. The restrictions included lifting no more than 20 or 30 pounds and no bending. These restrictions continued from November and December of 1996 through January of 1997. On February 14, 1997, plaintiff again received a physician's order not to work. In February of 1997 plaintiff was referred to a neurosurgeon, Dr. Murphy, to be evaluated because his condition had not improved. Dr. Murphy ordered three epidural blocks over the period from late February until early March. The epidurals proved unsuccessful, and pain and discomfort persisted in plaintiff's lower back. Thereafter, Dr. Murphy ordered plaintiff to participate in a physical therapy/work-hardening program, and he instructed plaintiff not to return to work until he completed the program.

After the epidural blocks, Wausau Insurance Company (Wausau), the workers' compensation carrier for defendant, contacted plaintiff about his medical care. After this telephone conversation in February, plaintiff retained counsel and began a workers' compensation action. On April 22, 1997, at the request of Wausau, plaintiff received an independent medical examination from Dr. Gapsis. In his examination, Dr. Gapsis concluded that the October 5, 1996, tractor incident aggravated a preexisting condition and that plaintiff could return to work immediately. On May 7, 1997, Kevin Hollowell went to plaintiff's residence and informed him that he must return to work immediately or face the consequence of being fired. Plaintiff stated that he could not return under Dr. Murphy's orders to finish the physical therapy program before returning to work. Plaintiff was fired.

A jury trial began on January 26, 1999. The trial revealed that the hierarchy within defendant went, from top to bottom, Peter Creighton to Doug Stallard to Kevin Hollowell, with Sandra Sharp reporting to Peter Creighton on workers' compensation matters. Testimony at the trial revealed that Kevin Hollowell was the primary source of information on the injury to plaintiff to the higher-ups within defendant's company. Kevin Hollowell did not believe plaintiff's claim as to the severity of his back injury. Testimony demonstrated that Kevin Hollowell inquired as to plaintiff's injury from mutual friends Doug and Marsha Frailey. The Fraileys testified that the tone of Kevin Hollowell's inquiry indicated skepticism as to plaintiff's injury. The Fraileys' testimony was the only testimony that was free of any ascertainable

bias in the case. Multiple witnesses testified to conflicting reports of the use of profanity on the part of Kevin Hollowell toward plaintiff and that Kevin Hollowell did not believe that plaintiff was hurt. Kevin Hollowell accused plaintiff of being lazy and trying to get a free ride at the expense of defendant. Testimony contained conflicting stories of plaintiff being ordered to violate his physician-ordered work restrictions. Plaintiff asserted, and Kevin Hollowell denied, that when plaintiff was terminated, Kevin Hollowell stated that defendant did not want plaintiff's kind of people working for it.

## II. ANALYSIS

Defendant argues that a punitive damages award is unwarranted in this case. Relying on the reasoning of various retaliatory discharge cases in Illinois (*Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978); *Motsch v. Pine Roofing Co.*, 178 Ill. App. 3d 169, 533 N.E.2d 1 (1988); *Heldenbrand v. Roadmaster Corp.*, 277 Ill. App. 3d 664, 660 N.E.2d 1354 (1996); *Clemons v. Mechanical Devices Co.*, 292 Ill. App. 3d 242, 684 N.E.2d 1344 (1997), *aff'd*, 184 Ill. 2d 328, 704 N.E.2d 403 (1998); *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 641 N.E.2d 395 (1994); *Hiatt v. Rockwell International Corp.*, 26 F.3d 761 (7th Cir. 1994); *Kritzen v. Flender Corp.*, 226 Ill. App. 3d 541, 589 N.E.2d 909 (1992)), defendant argues that the case at bar does not give rise to the "fraud, actual malice, deliberate violence[,] or oppression *** as to indicate a wanton disregard of the rights of others" (*Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359). Defendant's argument states initially that there is no direct evidence that defendant fired plaintiff over plaintiff's exercise of his rights under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)) and that Wausau received a "release" from Dr. Gapsis for plaintiff. Therefore, the action by defendant, even if resulting in compensatory damages for retaliatory discharge, does not rise to the level of wanton disregard for the rights of others as to warrant punitive damages.

On the other hand, plaintiff points to testimony indicating that Kevin Hollowell pressured plaintiff to violate his physician-ordered work restrictions and testimony that Kevin Hollowell stated that plaintiff was fired because defendant did not want his kind of people working for it. Plaintiff argues that it is for the trier of fact to assess the credibility of this testimony, denied by Kevin Hollowell, and give it whatever weight it sees fit. His argument continues that it is irrelevant whether the higher-ups in defendant's organization knew of Kevin Hollowell's conduct since he is an agent for defendant and, as such, defendant is potentially liable for his conduct.

██ ▌Issues I and III presented for review address the punitive

damages awarded in this case. In the first issue defendant asks this court to reverse the trial court's denial of its motion for judgment notwithstanding the verdict. The standard for review is, when the evidence is viewed in a light most favorable to the nonmoving party, does the evidence favor the movant so that no contrary verdict could stand? *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 131-32, 720 N.E.2d 242, 257 (1999). The measurement of the amount of punitive damages warranted in a case is a question for the trier of fact. *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359; *Motsch*, 178 Ill. App. 3d at 177, 533 N.E.2d at 6; *Hiatt*, 26 F.3d at 766. However, whether the facts of a particular case justify the imposition of punitive damages is a question of law. *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359; *Motsch*, 178 Ill. App. 3d at 177, 533 N.E.2d at 6; *Hiatt*, 26 F.3d at 766. Punitive damages act as a punishment for actions against Illinois public policy and as a warning to deter a defendant and others from committing similar offenses in the future. *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359; *Heldenbrand v. Roadmaster Corp.*, 277 Ill. App. 3d 664, 672, 660 N.E.2d 1354, 1360 (1996). Illinois recognizes that punitive damages are appropriate in cases of retaliatory discharge for filing a workers' compensation claim. *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 360; *Motsch*, 178 Ill. App. 3d at 177-78, 533 N.E.2d at 7. Absent punitive damages, there would be little deterrent preventing employers from terminating employees and paying a small fine for violating the Act (see 820 ILCS 305/26 (West 1996)). *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359. Punitive damages are warranted when the tort is committed with actual malice or fraud or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard for the rights of others. *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 444, 641 N.E.2d 395, 400 (1994); *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359; *Heldenbrand*, 277 Ill. App. 3d at 672, 660 N.E.2d at 1360; *Hiatt*, 26 F.3d at 766. Punitive damages are not presumed in a retaliatory discharge action; rather, the circumstances of each case must warrant punitive damages. *Dixon Distributing Co.*, 161 Ill. 2d at 443-44, 641 N.E.2d at 400.

■ The factual allegations presented by plaintiff paint a picture of an employee forced to choose between following the instructions of his physician or returning to work on a release by a physician with whom he does not have a treating doctor-patient relationship. Defendant, on the other hand, stands by the position that plaintiff was released by Dr. Gapsis, did not return to work, and was fired for his failure to show for work. The trial court ruled that plaintiff presented a factual case, which warrants the consideration of punitive damages. An employer cannot unilaterally rely on one physician's favorable diagno-

sis while at the same time dismiss another physician's unfavorable diagnosis. To do so would give an employer the ability to rely on its own medical evaluation as a reason to demand that employees return to work, even when that evaluation conflicts with that of the employee's physician. However, merely having a situation that can be exploited is not sufficient to warrant the application of punitive damages; there must be some allegation of actual malice, fraud, or willful and wanton disregard for the rights of others. *Dixon Distributing Co.*, 161 Ill. 2d at 444, 641 N.E.2d at 400; *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 359; *Heldenbrand*, 277 Ill. App. 3d at 672, 660 N.E.2d at 1360; *Hiatt*, 26 F.3d at 766. In this case, plaintiff presented factual allegations of harassment and verbal abuse by Kevin Hollowell. Further, it violates the purpose of the Act if an employer can dismiss an employee on the grounds of being lazy and not working when said employee's personal physician has ordered the employee not to return to work until physical therapy is completed. This constitutes sufficient grounds to impose punitive damages so defendant does not take such actions in the future.

In *Clark v. Owens-Brockway Glass Container, Inc.*, 297 Ill. App. 3d 694, 697 N.E.2d 743 (1998), this court expressed the public policy that justifies punitive damages in this case. In *Clark* an employee was injured on the job. The employer believed the employee to be malingering and receiving unwarranted workers' compensation benefits, and so the employer hired a private investigator to monitor her. In the end, the employer fired the employee for the fraudulent filing of a workers' compensation claim. *Clark*, 297 Ill. App. 3d at 696, 697 N.E.2d at 745. While discussing whether a summary judgment finding for the employee was warranted, this court illustrated the public policy that the trial court in this case reasonably could have found to warrant sending the issue of punitive damages to the jury. The *Clark* court stated: "We wish to be clear on this point. An employer may not discharge an employee on the basis of a dispute about the extent or duration of a compensable injury. An employer that fails to heed this rule subjects itself to a retaliatory discharge action under *Kelsay*." *Clark*, 297 Ill. App. 3d at 699, 697 N.E.2d at 746-47. We are not saying, and did not say in *Clark*, that a fraudulent workers' compensation claim, such as the bogus doctor's notes in *Wayne v. Exxon Coal USA, Inc.*, 157 Ill. App. 3d 514, 510 N.E.2d 468 (1987), are not a justification for termination. However, when there is a dispute between an independent medical examiner and an employee's physician with no evidence of fraud, the employer cannot discharge the employee on the basis of suspected laziness or malingering. It is for the Industrial Commission to settle disputes such as this where there are conflicting medical opinions.

*Clark*, 297 Ill. App. 3d at 700, 697 N.E.2d at 748. We find that the trial court had justification to send the issue of punitive damages to the jury.

■■ Issue III presents defendant's request for a new trial on the issue of punitive damages. Defendant asserts that the award of $50,000 was unwarranted. The standard of review is whether the verdict was against the manifest weight of the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13 (1992). A verdict is against the manifest weight when it is arbitrary, unreasonable, or not based upon any evidence. *Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 512-13. Where plaintiff's factual allegations are sufficient to state a claim for punitive damages, the trial court has the discretion to submit the issue for the jury, and the court's determination will not be disturbed absent an abuse of discretion. *Motsch*, 178 Ill. App. 3d at 177, 533 N.E.2d at 6. A reviewing court will not substitute its judgment for that of a jury unless the award shocks the conscience of the court or is outside the realm of fair and reasonable compensation. *Clark*, 297 Ill. App. 3d at 700-01, 697 N.E.2d at 748. Factors to consider when assessing punitive damages are: (1) the nature and enormity of the wrongdoing by the defendant, (2) the potential liability of the defendant for multiple claims by numerous persons affected by the wrongful conduct, and (3) the financial status of the defendants. *Motsch*, 178 Ill. App. 3d at 178, 533 N.E.2d at 7. In this case, defendant has an estimated worth over $150 million, with the farm division estimated at a value over $50 million. An award of $50,000 does not seem to be excessive. It does not shock the conscience of the court.

■ Issue II is whether the trial court erred in denying defendant's posttrial motion for a new trial on the issue of compensatory damages. The standard of review is whether the verdict was against the manifest weight of the evidence. *Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 512-13. A verdict is against the manifest weight when it is arbitrary, unreasonable, or not based upon any evidence. *Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 512-13. Defendant argues that compensatory damages should only be given from the period of May 7, 1997, through September 7, 1997, and that plaintiff should not be compensated after he voluntarily quit R.W. Turner Trucking. Plaintiff, on the other hand, contends that he is entitled to compensation until he obtained employment with Furness Trucking, excluding the time he worked for R.W. Turner Trucking. He argues that he quit because he had no alternative. His continued medical visits required him to take off too much work to continue to be employed by R.W. Turner Trucking. Defendant asserts that no party at R.W. Turner Trucking recalls plaintiff being forced to choose between physician appointments and work. However,

plaintiff states that it is for the trier of fact to determine. It is for the trier of fact to resolve conflicting testimony and give weight to the credibility of said testimony. *Maple*, 151 Ill. 2d at 452, 603 N.E.2d at 511-12. A reviewing court will not substitute its judgment for that of the trier of fact. *Maple*, 151 Ill. 2d at 452-53, 603 N.E.2d at 511-12. We will not in this case.

■ Issue IV asks whether the trial court erred in denying defendant's motion for remittitur. The standard of review is whether the trial court abused its discretion. *Shatkus v. Checker Taxi Co.*, 111 Ill. App. 2d 1, 8, 249 N.E.2d 704, 708 (1969). For the reason stated above, this court does not believe that the trial court abused its discretion.

For the foregoing reasons, the judgment of the circuit court of Fayette County is affirmed.

Affirmed.

CHAPMAN, P.J., and HOPKINS, J., concur.