XON BLACKBURN *et al.*, Plaintiffs, v. ILLINOIS CENTRAL RAILROAD COMPANY, Defendant-Appellant (Delbert Copple *et al.*, Plaintiffs-Appellees).

Fifth District    No. 5—06—0618

Opinion filed January 22, 2008.

Thomas R. Peters and Mark R. Kurz, both of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellant.

William P. Gavin, of Gavin Law Firm, of Belleville, for appellees.

JUSTICE SPOMER delivered the opinion of the court:

The defendant, Illinois Central Railroad Company (the Railroad), appeals from the order of the circuit court of Marion County that entered a judgment on jury verdicts in favor of plaintiffs Delbert Copple, Carl Heinrichsmeyer, and Donald Hyatt (the plaintiffs). For the reasons set forth below, we affirm the judgment of the circuit court.

## FACTS

The plaintiffs are among a group of 24 plaintiffs who sued the Railroad for claims arising under the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (2000)), whereby they alleged they were injured when they were exposed to asbestos, diesel exhaust, and other dangerous products during the course of their employment. The

plaintiffs claimed, *inter alia*, that the Railroad negligently failed to provide them with a reasonably safe place to work. The Railroad filed a motion to sever the cases for trial, and the circuit court granted the motion in part by consolidating the plaintiffs' cases into groups of four for trial. The plaintiffs' cases were the second group to be tried together before a jury. The other plaintiff in their group did not participate in the trial for reasons unrelated to this appeal. The verdicts in the first group's trial were previously affirmed on appeal. *Xon Blackburn v. Illinois Central R.R. Co.*, No. 5—06—0417 (2007) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)).

Delbert Copple was 79 years old at the time of the trial. Mr. Copple worked for the Railroad continuously from 1950 to 1986 as a stockman and laborer in various facilities in and around Centralia. He testified that in his work, he was exposed to asbestos-containing products, including asbestos sleeves, gaskets, brake shoes, and firebrick. Carl Heinrichsmeyer was 62 years old at the time of the trial. Mr. Heinrichsmeyer worked for the Railroad from 1963 until 1982, also in and around Centralia. He worked at various times as a stockman, chauffeur, and store clerk, and he testified that he also handled asbestos sleeves and gaskets. Donald Hyatt was 70 years old at the time of the trial. Mr. Hyatt worked for the Railroad from 1969 to 1999, beginning at the facility in Champaign. From 1970 until 1984, Mr. Hyatt was responsible for maintaining water and steam lines at various facilities from Champaign to Effingham. During his employment, Mr. Hyatt was exposed to asbestos piping and boiler insulation.

In 2003, the plaintiffs attended a screening set up by the attorneys working for their union. After the screening, Dr. Alvin Schonfeld diagnosed the plaintiffs with asbestosis, which is defined as the scarring of the lungs created by asbestos fibers. At the trial, Dr. Schonfeld testified that the plaintiffs' asbestos exposure during their employment with the Railroad caused, in whole or in part, their injuries.

After a lengthy trial at which each side presented numerous lay and expert witnesses, the jury returned verdicts in favor of the plaintiffs, awarding $220,000 in damages to Mr. Copple, $167,000 to Mr. Heinrichsmeyer, and $220,000 to Mr. Hyatt. The circuit court denied the Railroad's motions for a directed verdict, made at the close of the plaintiffs' evidence and again at the end of the trial. The circuit court denied the Railroad's posttrial motions and entered a finding pursuant to Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). The Railroad filed a timely notice of appeal. We will set forth additional facts from the record as needed to explain our resolution of each issue on appeal.

## ANALYSIS

### 1. Instructing the Jury on the Fear of Cancer

The Railroad argues that the circuit court erred in instructing the jury on the fear of cancer. The Railroad's argument on this issue is twofold. First, the Railroad argues that the circuit court erred in refusing to instruct the jury that in order to award damages for the fear of cancer, the jury must find that the fear must significantly and detrimentally affect the ability to carry on everyday life and work. Second, the Railroad argues that there was insufficient evidence presented to warrant a jury instruction on the fear of cancer as an element of damage for each plaintiff. We will address each argument in turn.

The United States Supreme Court has held that an asbestosis claimant, upon demonstrating a reasonable fear of cancer stemming from the claimant's existing disease, can recover for that fear as a part of asbestosis-related pain-and-suffering damages in a suit brought under FELA. *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 157, 155 L. Ed. 2d 261, 281, 123 S. Ct. 1210, 1223 (2003). However, it is incumbent upon the claimant to prove that his alleged fear is genuine and serious. *Ayers*, 538 U.S. at 157, 155 L. Ed. 2d at 281, 123 S. Ct. at 1223. In this case, the circuit court instructed the jury separately regarding each plaintiff as follows:

> "If you decide for the plaintiff *** on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted, in whole or in part, from the negligence of the defendant, taking into consideration the nature, extent[,] and duration of the injury:
>
> * * *
>
> The genuine and serious fear of cancer experienced and reasonably certain to be experienced in the future."

■ The circuit court refused the Railroad's proposed instruction, which stated: "In order to recover for fear of cancer, a plaintiff must demonstrate that his fear is genuine and serious. This means fear that significantly and detrimentally affects the ability to carry on everyday life and work." This proposed instruction was modeled after Justice Breyer's partial dissent in *Ayers*, in which he stated that he would "permit recovery where the fear of cancer is unusually severe—where it significantly and detrimentally affects the plaintiff's ability to carry on with everyday life and work." *Ayers*, 538 U.S. at 187, 155 L. Ed. 2d at 300, 123 S. Ct. at 1239 (Breyer, J., concurring in part and dissenting in part). The Railroad argues that Justice Breyer is proposing a definition of "genuine and serious." However, he is in fact, proposing a

more stringent standard than that handed down by the majority in *Ayers*. Accordingly, the circuit court did not err when it rejected the Railroad's tendered instruction and instructed the jury in accordance with the majority opinion in *Ayers*.

We now turn to the issue of whether the circuit court erred in determining that there was sufficient evidence to support a jury instruction on the fear of cancer regarding each plaintiff. Our review of the record reveals that Dr. Douglas Pohl testified that asbestos is carcinogenic and that a person who has been exposed to asbestos is at an increased risk of cancer. Dr. Schonfeld also testified that asbestosis sometimes causes cancer. Mr. Copple testified that he is concerned, even worried, about the prospect of developing cancer. Mr. Heinrichsmeyer testified that he is concerned about taking care of his family in the event that he contracts the disease. Mr. Hyatt testified that cancer is on his mind all the time and that he had pneumonia in January and thought he might have been contracting cancer at that time. We find this evidence sufficient to support the circuit court's decision to instruct the jury that it could award each plaintiff damages for the fear of cancer should it find that fear to be genuine and serious.

## 2. Denial of the Motion for a New Trial on the Issue of Damages or a Remittitur

### a. *Standard of Review*

■ The Railroad also argues that the circuit court erred in denying its motion for a new trial on the entire damages award and in denying its alternative motion for a remittitur on the future-medical-expense and pain-and-suffering awards. When we review a circuit court's ruling on a motion for a new trial on the issue of compensatory damages, the standard of review is whether the verdict is against the manifest weight of the evidence. *Hollowell v. Wilder Corp. of Delaware*, 318 Ill. App. 3d 984, 990 (2001), citing *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). "A verdict is against the manifest weight when it is arbitrary, unreasonable, or not based upon any evidence." *Hollowell*, 318 Ill. App. 3d at 990, citing *Maple*, 151 Ill. 2d at 454. The standard of review for the circuit court's ruling on a motion for a remittitur is whether the circuit court abused its discretion. *Hollowell*, 318 Ill. App. 3d at 991.

In addition to the standard of review, it is important to note several principles that are applicable when reviewing a damages award. "The determination of damages is a question reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court." *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (1997). "An award of damages will be deemed excessive

if it falls outside the range of fair and reasonable compensation or results from passion or prejudice, or if it is so large that it shocks the judicial conscience." *Richardson*, 175 Ill. 2d at 113. "When reviewing an award of compensatory damages for a nonfatal injury, a court may consider, among other things, the permanency of the plaintiff's condition, the possibility of future deterioration, the extent of the plaintiff's medical expenses, and the restrictions imposed on the plaintiff by the injuries." *Richardson*, 175 Ill. 2d at 113-14.

### b. *The Identical Awards*

Before turning to our analysis of the specific items of damages awarded to each of the plaintiffs, we recognize that in several places in the Railroad's brief, the Railroad points to the fact that the jury made identical awards to the plaintiffs for the fear of cancer, disability, and pain and suffering and identical awards to Mr. Copple and Mr. Hyatt for future medical expenses. The Railroad directs this court's attention to that fact in support of its arguments that the trials should have been severed; that the jury should have been instructed on a definition of "genuine and serious" in relation to the fear of cancer; and that without evidence of life expectancy the jury should not have been instructed to consider, in assessing the awards for future medical expenses, how long the plaintiffs are likely to live. Although we have analyzed these specific issues in other parts of this opinion and found no error, we find it provident to consider whether the identical awards, in and of themselves, would necessitate a new trial on damages.

■ We find no authority in Illinois, and the Railroad points to none, that stands for the proposition that identical awards, in and of themselves, are reversible error. In light of this, we have examined how this issue has been handled by other jurisdictions. In so doing, we were persuaded by the reasoning of the Kansas Supreme Court, which stated as follows:

"The ' [""]*only* standard for evaluation is such *amount* as reasonable persons estimate to be fair compensation for the injuries suffered.[""] ' (Emphasis added.) *Morris v. Francisco*, 238 Kan. [71,] 77-78[, 708 P.2d 498, 503-04 (1985)] (quoting *Ratterree v. Bartlett*, 238 Kan. [11,] 23[, 707 P.2d 1063, 1072 (1985)]). There is no per se rule which discredits identical awards, and there is no provision in current law for comparison of one plaintiff's recovery with another's to serve as the basis for overturning a jury's verdict." *Kuhl v. Atchison, Topeka & Santa Fe Ry. Co.*, 250 Kan. 332, 344, 827 P.2d 1, 9 (1992).

The Kansas Supreme Court went on to explain that if reasonable persons could estimate the damages of each individual plaintiff to be a fair compensation for the injuries suffered, without comparing them

to each other, then the identical awards should be upheld. *Kuhl*, 250 Kan. at 344, 827 P.2d at 9. Similar conclusions have been reached by the Maine Supreme Court, as well as the United States Court of Appeals for the Ninth Circuit. See *Harris v. Soley*, 2000 ME 150, ¶27, 756 A.2d 499, 508 (2000); *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999). We find this analysis persuasive for our purposes here, especially in light of the fact that all three plaintiffs were similarly diagnosed with asbestosis and had similar physical manifestations of this disease, presenting with symptoms of shortness of breath and some limitations on their levels of exertion. Although Mr. Copple was 79 years old at the time of the trial, while Mr. Heinrichsmeyer was 62 and Mr. Hyatt was 70, a reasonable jury could conclude that because longevity is uncertain, similar awards for future damages were justified based on the similarity of their asbestosis-related conditions. Accordingly, we decline to substitute our judgment for that of the jury solely on the basis of identical awards.

### c. *Future Medical Expenses*

We begin our analysis of the particular verdicts at issue with the award for future medical expenses. The jury awarded Mr. Copple and Mr. Hyatt each $100,000, and it awarded Mr. Heinrichsmeyer $47,000 for future medical expenses. We cannot say that these awards are against the manifest weight of the evidence or that the circuit court abused its discretion in denying the motion for a remittitur with regard to future medical expenses. Dr. Schonfeld testified that because the plaintiffs were diagnosed with asbestosis, they would need periodic X rays, medical exams, and colonoscopies. Similarly, Dr. Pohl testified that an asbestosis patient must have routine pulmonary testing throughout his life. Mr. Copple testified that he plans to monitor his condition with his family doctor. Mr. Heinrichsmeyer testified that he also plans to monitor his health. Mr. Hyatt testified, without objection, that his doctor told him he would need a chest X ray every year.

The Railroad argues that these verdicts should be reversed because the plaintiffs did not produce evidence of any specific medical expenses that they would incur in the future other than "generic references" to periodic visits to a physician for a chest X ray. However, "the trier of fact enjoys a certain degree of leeway in awarding compensation for medical costs that, as shown by the evidence, are likely to arise in the future but are not specifically itemized in the testimony." *Richardson*, 175 Ill. 2d at 112. The Railroad also points to the plaintiffs' counsel's statement during closing argument that a "fair figure" for future medical expenses would be $5,000. However, " '[a] jury's award of a verdict higher than that requested by counsel does not, by itself,

indicate that the jury acted out of passion or prejudice.' " *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 250-51 (2006), quoting *Fedt v. Oak Lawn Lodge, Inc.*, 132 Ill. App. 3d 1061, 1072 (1985).

We find that the amounts awarded fall within a range of fair and reasonable compensation for periodic X rays, exams, and other diagnostic testing that the evidence shows the plaintiffs will face due to the asbestosis diagnosis. In addition, these amounts are not so large that we can say that they are based on juror passion or prejudice or that they shock the judicial conscience. Accordingly, we will not substitute our judgment for that of the jury. The circuit court did not err in allowing the jury's verdict with regard to future medical expenses to stand.

### d. *Pain and Suffering, Disability, and Fear of Cancer*

We now turn to the jury's award to the plaintiffs for pain and suffering and disability and fear of cancer. The jury awarded each of the plaintiffs $15,000 for pain and suffering, $75,000 for disability, and $30,000 for fear of cancer. Dr. Alvin Schonfeld testified that the plaintiffs suffered from asbestosis, a permanent condition, which was caused, in whole or in part, by their employment with the Railroad. Dr. Schonfeld testified that the plaintiffs' complaints of shortness of breath were consistent with his findings of asbestosis and that the plaintiffs were at an increased risk of developing cancer as a result of their exposure to asbestos. Dr. Donald Breyer testified that the plaintiffs' chest X rays contained varying degrees of abnormalities consistent with asbestosis. Mr. Copple testified that he gets winded when he works out at the gym and when walking up stairs. Mr. Heinrichsmeyer testified that just about every activity makes him short of breath. He testified that he is not able to work the same hours he used to work at his tavern, due to shortness of breath. Although he plays golf, he must use a golf cart. Mr. Hyatt testified that he would have to stop halfway up the stairs due to shortness of breath. Dr. Pohl testified that the plaintiffs' complaints were consistent with his diagnosis of asbestosis. The plaintiffs testified that they experience shortness of breath to varying degrees, and they gave some indication on how this impacts their lives.

In addition to the testimony of the plaintiffs, expert testimony was presented that asbestosis has the very real potential to worsen in the future. In addition, expert testimony was presented regarding the increased risk of cancer, and the plaintiffs testified regarding the concern and worry this caused them. As explained elsewhere in this opinion, the jury was correctly instructed on these elements of damages, and it was within its discretion to assess a monetary value for

these noneconomic items of damage. Because we cannot say that the amounts awarded fall outside the range of fair and reasonable compensation or result from passion or prejudice or that the amounts awarded are so large that they shock the judicial conscience, we will not disturb the award. Accordingly, the circuit court did not err when it denied the Railroad's motion for a new trial on damages or a remittitur.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

WELCH and WEXSTTEN, JJ., concur.