In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2853

JARED BEATTY,

*Plaintiff-Appellant,*

*v.*

OLIN CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 09-cv-795-JPG-SCW—**J. Phil Gilbert**, *Judge.*

ARGUED FEBRUARY 13, 2012—DECIDED SEPTEMBER 6, 2012

Before POSNER, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Jared Beatty injured his back on the job at Olin Corporation's manufacturing plant in East Alton, Illinois. At the direction of Olin's medical department, he was evaluated by his physician, who instructed him to remain off of work for a week. He passed that doctor's note on to the medical department. But with the exception of two days of light duty, he did not report for work for the next six weeks. He eventually got a retroactive medical excuse from his doctor,

but Olin's medical department sought an independent medical examination, anticipating the potential for a workers' compensation claim.

In the meantime, a clerk in Beatty's division of the plant told Olin's labor-relations manager that Beatty had not been at work for several weeks and had not called in to report his absence. Olin's attendance-control policy requires employees to call in daily if they cannot come to work, and failure to call in for three workdays in a row is grounds for termination. Based on Beatty's noncompliance with the company's attendance-control policy, the labor-relations manager terminated his employment.

Beatty later filed a workers' compensation claim regarding his injury, which the parties eventually settled. He then sued Olin for retaliatory discharge under Illinois law, claiming that he was terminated in response to his anticipated exercise of his workers' compensation rights. The district court granted summary judgment for Olin.

We affirm. This case presents a straightforward question of causation: Did Beatty's possible pursuit of a workers' compensation claim prompt Olin to fire him? There is no evidence that it did. The labor-relations manager who made the decision was entirely unaware of Beatty's status vis-á-vis Olin's medical department. All he knew was what the plant clerk told him: Beatty had not called in for several weeks to report his absence. Based on that violation of Olin's attendance policies, the labor-relations manager fired him. On these facts, there was no retaliatory discharge.

**I. Background**

Beatty began working as an adjustor on the floor of Olin's manufacturing plant in East Alton in 2004. On September 28, 2007, he injured his side and lower back while moving a tub of shells. His foreman sent him to Olin's medical department, which in turn referred him to his personal physician. Beatty did so on October 1. The doctor gave him a no-work note until their next appointment, which Beatty sent to Olin's medical department. The doctor's note, however, was only good through October 5, and Beatty did not provide Olin with a new one even after he saw his doctor again on October 8. A week later Olin's medical department sent Beatty a letter explaining that it needed documentation regarding his injury and instructing him to report for a medical evaluation at Olin on October 18. Beatty did not show up for the appointment, show up for work, or respond to the letter. On October 23 Bill Kern, Olin's Assistant Director for Labor Relations, sent Beatty a letter stating that he missed the appointment, that he was absent without approval, and that he needed to report to work.

Two days later Beatty again saw his personal physician, who gave him a new off-work note extending back to September 27 and forward to October 29. The following week Beatty reported for light duty on two days—October 31 and November 1—but complained of shoulder pain. He was once again referred to his own doctor, who wrote another off-work note. Beatty gave the new doctor's note to Olin's medical department on November 5. At this point the medical department

sought an independent medical examination ("IME") from an impartial physician. The IME took place on November 9, and the report reached the medical department on November 19.

On that day Connie DeProw, a nurse and supervisor of disability claims at Olin, emailed others in the medical department stating that Beatty was "off work, not on approved leave," and that she had "discussed termination with our labor relations group." She also acknowledged receipt and review of the IME report, and speculated that Beatty "will be getting an attorney soon."

Sporadically throughout these two months, Beatty called in or stopped in at Olin, but the record is unclear whether he had contact with his plant division or just the medical department. At some unspecified point, he stopped checking in. Beatty claims that an unidentified woman in Olin's bureaucracy told him that he no longer needed to call in his absences.

On November 13 a clerk in Beatty's plant division told Bill Moore, Olin's Manager of Labor Relations, that Beatty had been absent and had not called in "for a couple of weeks." Olin's attendance policy, plant rules, and collective-bargaining agreement required employees to report their absences daily unless they had prior written approval for an absence; failure to report for three consecutive working days was grounds for termination. That same day, and in response to the information provided by the plant clerk, Moore ordered Beatty's employment terminated based on his unexcused absences from November 7 to 13. There is no evidence

that Moore discussed Beatty's status with the medical department, DeProw, Kern, or anyone else who knew of his injury.

Beatty subsequently sought and received a workers' compensation settlement from Olin.[1] He then brought this suit for retaliatory discharge under Illinois law, invoking the district court's diversity jurisdiction. *See* 28 U.S.C. § 1332. Olin moved for summary judgment based on, among other things, the lack of evidence of a causal connection between Beatty's discharge and his exercise of workers' compensation rights. The district court granted the motion and entered judgment for Olin. Beatty appealed.

## II. Discussion

We review the district court's grant of summary judgment de novo, construing the evidence and drawing reasonable inferences in favor of Beatty, the nonmoving party. *Coca-Cola Enters., Inc. v. ATS Enters., Inc.*, 670 F.3d 771, 774 (7th Cir. 2012). Summary judgment is appropriate if the evidence demonstrates that there are no genuine issues of material fact and Olin is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Coca-Cola Enters.*, 670 F.3d at 774.

---

[1] In the workers' compensation settlement, Beatty and his attorney acknowledged that he was terminated "for unrelated reasons," presumably the attendance-policy violation.

The Illinois Workers' Compensation Act provides a comprehensive scheme to compensate employees injured on the job. *See* 820 ILL. COMP. STAT. 305. The Illinois Supreme Court has recognized a common-law cause of action for retaliatory discharge where an employee is terminated because of his actual or anticipated exercise of workers' compensation rights. *See Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357 (Ill. 1978). The state supreme court has emphasized, however, that the retaliatory-discharge cause of action is a "narrow" and "limited" exception to the at-will employment doctrine, one that the court is disinclined to expand. *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 881, 884-85 (Ill. 1994); *see also Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992) ("Despite the revolutionizing effect of *Kelsay,* the common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason remains the law in Illinois. . . . *Kelsay* only excepts discharges which violate a clearly mandated public policy.").

To prevail on a claim of retaliatory discharge, the plaintiff has the burden of proving three elements: "(1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act." *Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998) (internal citations omitted); *see also Gordon v. FedEx Freight, Inc.,* 674 F.3d 769, 773 (7th Cir. 2012). "Concerning the element

of causation, the ultimate issue to be decided is the employer's motive in discharging the employee." *Clemons*, 704 N.E.2d at 406. It is undisputed that Beatty was an employee of Olin at the time of his back injury, that he exercised his workers' compensation rights, and that he was discharged. The only disputed element is causation.

The district court held, and we agree, that no evidence supports Beatty's claim that he was fired because of his assertion or anticipated assertion of workers' compensation rights. The termination decision was made by Moore, who as Olin's manager of labor relations was responsible for making these determinations. Moore received information from a plant clerk that Beatty had not reported for work or called in his absence for several weeks. Olin's attendance policy required employees to call in their absences daily and clearly provided that an employee who failed to report or call in for three consecutive days was subject to termination. Applying that policy to the information he had from the clerk, Moore ordered Beatty's termination.

No witness says that Moore talked with the medical department, DeProw, Kern, or anyone else who knew of Beatty's injury; nor is there any other evidence tending to suggest that Moore was aware of Beatty's medical status when he issued the termination order. *Cf. Marin v. Am. Meat Packing Co.*, 562 N.E.2d 282, 286 (Ill. App. Ct. 1990) ("Evidence that those responsible for plaintiff's termination knew he intended to file a worker's compensation claim is 'essential' to a retali-

atory discharge action."). To the contrary, on the undisputed record evidence, Moore fired Beatty because he failed to show up at work or call in, as required by plant rules—*not* because of his injury, the gaps in his doctor's notes, or the possibility that he might file a workers' compensation claim.

Faced with these facts, Beatty attempts several different routes to try to win reversal. All are dead ends. First, he claims that he received authorization from someone at Olin to stop calling in. But he is unable to say who, what position that person held, or when the conversation took place. In any event, this line of argument ignores the central legal question in a retaliatory-discharge case. Accepting Beatty's factual claim as true—that an unidentified Olin employee told him he no longer needed to call in his absences—would tend to prove only that Moore fired him based on incorrect or incomplete information, *not* that Moore retaliated against him for exercising his workers' compensation rights.

Second, and in a similar vein, Beatty faults Moore for discharging him for failing to call in from November 7 to 13 when he was simply following the instructions he received from Olin's medical department to attend an IME. True enough, the evidence does point to an obvious failure of communication. But the retaliatory-discharge cause of action is narrow and requires evidence of *retaliatory motive*, not just sloppy personnel practices. The critical fact here is that Moore didn't know about Beatty's injury or medical status

when he issued the termination order. That Olin's right hand didn't know what its left hand was doing is not actionable as a retaliatory discharge. *See Horton v. Miller Chem. Co.*, 776 F.2d 1351, 1359 (7th Cir. 1985) (applying Illinois law) (explaining that a decision to terminate based on misleading or incomplete information does not amount to retaliation).

Third, Beatty insists that Moore either knew or should have known about his medical status and possible workers' compensation claim, and that a reasonable jury could reject Moore's claim of ignorance as "dishonest." But Beatty offers no *evidence* to support this assertion. A properly supported motion for summary judgment cannot be defeated by simply arguing that a jury might not believe a witness's testimony. Stated differently, *argument* is insufficient to avoid summary judgment; the nonmoving party needs to come forward with *evidence*. *Outlaw v. Newkirk,* 259 F.3d 833, 839 n.2 (7th Cir. 2001); *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 361 (7th Cir. 1992).

Next, Beatty argues that Moore was executing an "illegal" retaliatory policy, as was the case in *Siekierka v. United Steel Deck, Inc.*, 868 N.E.2d 374 (Ill. App. Ct. 2007). But *Siekierka* is easily distinguishable. There, the Illinois Appellate Court held that an ostensibly neutral employment policy that had the effect of penalizing employees who file workers' compensation claims may in fact be retaliatory. *Id.* at 380-81. In *Siekierka* the plaintiff suffered a work injury necessitating surgery, but his employer's workers' compensation policy

required him to see an insurer-provided doctor before proceeding. The insurer's doctor adopted a "wait and see" approach before considering surgery, and the extra four weeks of waiting placed the employee beyond the duration of his authorized leave. The employer then terminated the employee for failing to return to work. The appellate court noted that under the employer's policy, the plaintiff "was faced with the option of pursuing his worker's compensation right to have the surgery or attempting to return to work without it." *Id.* at 381.

Here, in contrast, Beatty was permitted to miss work based on his doctor's notes (though some of the time off was excused only retroactively), but he was *not* excused from Olin's policy requiring employees to call in their absences. Unlike in *Siekierka*, Olin's call-in policy was completely unrelated to the company's policy regarding workers' compensation benefits; complying with the attendance policy did not put Beatty in any sort of a workers' compensation catch-22, as was the case in *Siekierka*. Nothing in the record links Moore's enforcement of Olin's call-in policy to a retaliatory purpose.

Beatty argues that DeProw's November 19 email provides the link. In it DeProw refers to Beatty's absence and the results of the IME report, and also says that she "discussed termination with our labor relations group" and states her belief that Beatty "will be getting an attorney." But this email was sent several days *after* Moore terminated Beatty. Moore is not a listed recipient, and there is no evidence that DeProw or anyone else

with knowledge of Beatty's injury talked to Moore about Beatty's case. In short, no evidence suggests that Moore was privy to any of DeProw's comments before he made the termination decision. If there were, we would have a different case. *Cf. Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 774 (7th Cir. 2008) (applying Illinois law) (holding that if emails exchanged between decision-makers and other employees evidenced retaliation, then summary judgment was inappropriate).

Finally, Beatty relies on two decisions of the Illinois Appellate Court concerning conflicting medical reports in workers' compensation cases. Neither applies to this case. The first, *Grabs v. Safeway, Inc.*, 917 N.E.2d 122 (Ill. App. Ct. 2009), involved a dispute between an employer and two of its employees over whether the employees were fit to return to work. The employees' treating physicians recommended that they remain off work, while an independent examiner said they should return. The employer followed the IME's recommendation and discharged the employees when they failed to report for work. *Id.* at 125-26. The court held that because the employees had workers' compensation petitions pending at the time of their discharge, only the Illinois Workers' Compensation Commission could resolve the dispute between doctors over the employees' fitness to return to work. *Id.* at 130. Here, in contrast, Beatty's IME was completely unrelated to Moore's termination decision. In fact, the IME report did not even reach Olin's medical department until several days *after* Beatty's termination. *Grabs* does not apply.

The second case, *Hollowell v. Wilder Corp. of Delaware*, 743 N.E.2d 707 (Ill. App. Ct. 2001), is similarly inapposite. In *Hollowell* the employee injured his back at work, commenced treatment, and filed for workers' compensation benefits. *Id.* at 709-10. Although his personal physician instructed him to remain off of work, his supervisor suspected that he was illicitly avoiding returning to work. Relying on the results of a disputed IME, the employer demanded that the employee return to work or face discipline. When the employee refused, his employment was terminated. *Id.* at 710. As in *Grabs*, the *Hollowell* court disapproved of the employer's reliance on the disputed IME to discharge the employee. The court held that "it violates the purpose of the Act if an employer can dismiss an employee on the grounds of being lazy and not working when said employee's personal physician has ordered the employee not to return to work." *Id.* at 711-12.

*Hollowell,* like *Grabs,* is irrelevant here. Moore did not rely on a disputed IME in deciding to terminate Beatty's employment; indeed, he was entirely unaware of Beatty's medical status. The undisputed evidence thus points in only one direction: Moore fired Beatty based on his noncompliance with Olin's attendance policy, not in retaliation for his anticipated exercise of his workers' compensation rights. The district court properly granted summary judgment for Olin.

AFFIRMED.