> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 13, 2020[*]
Decided March 13, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1661

| | |
|---|---|
| MICHAEL R. COOPER,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 17-CV-1461 |
| STEVEN J. HAW and CRYSTALINA<br>MONTANO,<br>    *Defendants-Appellees.* | William E. Duffin,<br>*Magistrate Judge.* |

## O R D E R

While Michael Cooper was a pre-trial detainee at the Milwaukee County Jail, a corrections officer accused him of assaulting another detainee. Cooper sued two other officers who he believes violated his rights to due process during the resulting disciplinary proceedings. The district court entered summary judgment in favor of the officers, concluding that neither was responsible for the alleged deprivations of process and that, in any event, the denial of those processes was harmless. We affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

On cross-motions for summary judgment, we construe all facts and draw all reasonable inferences in favor of the party against whom the motion under consideration was filed; here, Cooper. *See Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). A corrections officer, Robert Ehlers, reported that he saw and heard Cooper punch another detainee—something Cooper denies. Ehlers put the unit on lockdown and called a lieutenant, Crystalina Montano. She investigated the incident by interviewing Ehlers, Cooper, and the other detainee, whom she sent to be treated for a bloodied lip. Montano determined that she had enough evidence to place Cooper on "pending discipline" status. She informed Cooper that he would be placed in a segregated cell pending further investigation and a disciplinary hearing. If he did not receive a hearing within 72 hours, she said, he would be returned to the general population. Cooper was taken to segregation shortly after 7:00 a.m.

Ehlers prepared an incident report and a rules-violation report. Montano reviewed the rules-violation report, signed it, and returned it to Ehlers. One copy of the report was made for Cooper, one for the jail's classification department, and one for the disciplinary unit. Cooper did not receive his.

Because of overcrowding in the disciplinary unit, Cooper was placed in an overflow unit. This unit did not have disciplinary hearing rooms; instead, hearings were typically conducted over the intercom within the cell. (Jail policy no longer permits this practice.) Cooper was not told when his hearing was scheduled. At 8:08 p.m. on the third day (approximately 84 hours after Cooper moved to the disciplinary unit), lieutenant Steven Haw announced over the intercom in Cooper's cell that he would begin conducting the disciplinary hearing.

Haw did not recall this particular hearing, but he submitted a declaration attesting to his general practices. Before each hearing, Haw reviewed the rules-violation and incident reports and, if his schedule permitted, interviewed any officers involved. During disciplinary hearings, Haw read aloud the rules that the detainee allegedly violated and the rules-violation report, asked the detainee to tell his side of the story, and inquired whether any witnesses had relevant information. If a detainee identified a witness, Haw interviewed that witness if doing so would not pose a security risk and if the testimony was not likely to be irrelevant or cumulative.

Haw did not recall whether Cooper requested witnesses but knew that he did not interview any. At his deposition, Cooper testified that he had requested witnesses, but Haw ignored him. Cooper, however, did not tell Haw whether any specific witnesses had relevant information; rather, he said that the housing unit "was filled"

with detainees who witnessed the incident. When asked at his deposition who he would have proposed as a witness, Cooper again suggested "the whole pod" (64 detainees); when pressed further, Cooper said that he probably had four detainees in mind, only one of whom he could name.

At the end of the disciplinary hearing, Haw found that Cooper had violated three rules and assigned him 12 days in disciplinary confinement, with credit for the time he already spent there. Haw based his finding on evidence including the rules-violation report and the incident report. He attested that he "would have" relayed his findings "verbally" at the end of the hearing, while Cooper testified that he did not know what rules he was found guilty of breaking nor that he had received 12 days' disciplinary confinement until another officer told him the next day. Cooper asked Haw several times how to appeal but received no response. Cooper did not get a written decision from Haw; Haw's practice was to deliver the written findings to the classification department, which would distribute a copy to the detainee. Cooper did not appeal; instead, he filed a grievance, saying that Montano and Haw violated his due-process rights in connection with the disciplinary hearing.

Cooper then sued Montano and Haw under 28 U.S.C. § 1983. Specifically, he alleged that: (1) Montano and Haw did not provide him written notice of the charges against him; (2) Haw did not give him 24 hours' advance notice of the disciplinary hearing, a written notice of the post-hearing determination, or a notice of his right to appeal; (3) Haw conducted the hearing more than 72 hours after Cooper was moved to disciplinary housing; and (4) Haw did not permit him to call witnesses.

After discovery, all parties moved for summary judgment, and the district court granted Montano and Haw's motion and denied Cooper's. The district court determined that Cooper lacked evidence that Montano or Haw was responsible for providing Cooper with any of the notices he complained that he had not received. And neither the 12-hour delay nor the refusal to call witnesses caused Cooper cognizable harm. Cooper challenges both conclusions on appeal.[1]

---

[1] We first must address our jurisdiction. Cooper moved to alter the judgment nine days after it was entered, invoking Federal Rule of Civil Procedure 59(e). While that motion was pending, and 28 days after the judgment entered, Cooper filed a notice of this appeal. That notice was not effective until the district court denied Cooper's Rule 59(e) motion. FED. R. APP. P. 4(a)(4)(B)(i). Cooper filed another (untimely) notice of

Cooper first contends that the district court improperly drew inferences in the defendants' favor when it relied on their evidence that neither was personally responsible for providing Cooper with written notice of his charges, 24-hours' advance notice of the hearing, a written notice of the post-hearing determination, or notice of the right to appeal. This argument fails because, in opposing summary judgment, the non-movant "must present affirmative evidence in order to defeat a properly supported motion," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007), and Cooper did not.

With respect to Montano, Cooper did not refute the defendants' testimonial evidence[2] that the investigating officer was not responsible for distributing copies of incident reports to detainees charged with rules infractions. The defendants attested that the drafting officer (here, Ehlers) was responsible for delivering the charges to the officer in charge of the disciplinary unit, who was then responsible for providing it to the detainee. With respect to Haw, the defendants' evidence showed that the hearing officer was not responsible for providing 24 hours' notice of the hearing time (there was no guarantee that he would be working at that day); the jail's classification department was responsible for delivering the hearing findings; and the jail's handbook laid out the appeal process. Cooper did not counter these facts with record evidence, as required by Federal Rule of Civil Procedure 56(c)(1)(A); rather, he simply asserted that both defendants were responsible for providing these notices. Because argument alone is insufficient to avoid summary judgment, *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012), the district court did not wrongly draw conclusions based on disputed facts.

Cooper next argues that he established multiple violations of his due-process rights that make his 12-day punishment unlawful. The parties agree that Cooper's placement in disciplinary segregation was a punishment, and thus triggered his right to due process. *See Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979); *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999). Cooper therefore is correct that he had a right to receive, at least: "(1) advance written notice of the disciplinary charges against him; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses … ;

---

appeal from that order, but he voluntarily dismissed that appeal. That appeal does not affect our jurisdiction to review the summary judgment decision.

[2] Oddly, the defendants refer throughout their summary judgment briefing to a declaration from Montano, but it was not filed on the record. Nevertheless, the defendants provided additional evidence—declarations from Haw and Jason Hodel, one of the jail's records custodians—in support of these facts.

and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). (We say "at least" because *Hill* involved the rights of convicted prisoners facing discipline, whereas Cooper was a pre-trial detainee and therefore was entitled not to be treated "worse than a convicted criminal." *Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011).) He also asserts that due process required the defendants to provide him with notice of his hearing 24 hours in advance and a hearing within 72 hours of his placement in segregation. We need not address whether the Due Process Clause requires these additional procedures because, even if we assume that each of the alleged violations took place, we agree with the district court that Copper failed to provide evidence that the individual defendants were at fault or that his punishment would have been different had he received additional notices or witnesses at his hearing.

As just discussed, Cooper lacks evidence that Montano and Haw were personally responsible for providing to Cooper a written notice of the charges, a notice of the hearing, or a written decision. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (only those personally responsible for a constitutional violation are liable under § 1983). Assuming that breakdowns in the usual procedures occurred, neither Montano nor Haw had a duty to rectify them; "[p]ublic officials do not have a free-floating obligation to put things to rights," and "no prisoner is entitled to insist that one employee do another's job." *Id.* at 595.

With respect to Cooper's other contentions—that his disciplinary hearing was delayed 12 hours beyond what he was promised and that he was not permitted to call witnesses—the failure to provide these safeguards did not cause him harm. *See Piggie v. Cotton*, 344 F.3d 674, 677–78 (7th Cir. 2005) (applying harmless-error analysis to prison disciplinary proceedings). Even assuming that he was entitled to a hearing within exactly 72 hours (not "three days," as the defendants contend), he got full credit for time served once the charge was sustained, and so his time in segregation was not prolonged as a result of the delay. And, crediting Cooper's assertion that Haw ignored his request to call witnesses, Cooper still has not identified a single witness who would have testified that he did not punch the other detainee or explained how else that detainee sustained his injuries.

AFFIRMED