In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1727

ZACHARY JOHNSON,

*Plaintiff-Appellant,*

*v.*

BESSIE DOMINGUEZ, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-10280 — **Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 21, 2021 — DECIDED JULY 23, 2021

Before FLAUM, SCUDDER, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Zachary Johnson, an inmate at
Dixon Correctional Center in Illinois, sued four medical pro-
fessionals under 42 U.S.C. § 1983 alleging that they were de-
liberately indifferent to his serious medical needs because
none of them referred Johnson for surgery to repair his hernia.
The district court granted summary judgment in defendants'
favor, concluding that the record failed to support that de-
fendants acted with deliberate indifference. Although the

record showed that Johnson complained, intermittently, of hernia pain to Dixon medical staff over a period of several years, Johnson's hernia was at times undetectable on examination, and even when detected, it was always small and reducible. Additionally, defendants prescribed Johnson over-the-counter pain medication and abdominal binders to manage his symptoms. On appeal, Johnson insists that a jury question remains as to whether defendants' treatment was constitutionally deficient. But because the record lacks evidence to support that defendants' non-surgical treatment amounted to deliberate indifference, we affirm.

I

Zachary Johnson has been incarcerated at Dixon Correctional Center since 2011. Johnson first noticed his hernia prior to his incarceration in 2009 while helping a friend move. At that time, Johnson noticed a bulge in his stomach after feeling something, but he "left it at that" without seeking treatment. Johnson also has Type 1 Diabetes—a condition that was diagnosed prior to his incarceration.

Between June 2011 and June 2016, medical professionals at Dixon evaluated Johnson more than ninety times. These visits included treatment of other conditions unrelated to his hernia, including management of his often-uncontrolled diabetes. Johnson first complained about his hernia on June 20, 2011, to nurse Virginia Mavis. Johnson requested hernia surgery, reporting that his hernia had been present for five years. Nurse Mavis then referred Johnson to Dr. Imhotep Carter for evaluation. On August 9, 2011, Johnson returned to sick call and nurse Jenny Brower treated him. At that appointment, Johnson inquired about the status of a physician appointment to evaluate his hernia, and nurse Brower told him an

appointment would be made for August 17, 2011. Johnson did not attend that appointment. He returned to nurse sick call on September 20, 2011, advising that he missed his hernia appointment because he was on a court writ and requested it be rescheduled.

On October 5, 2011, Johnson saw defendant Dr. Bessie Dominguez for assessment of his hernia. Dr. Dominguez recorded Johnson's complaint of a right-side hernia, which Johnson said he had for two or three years. Dr. Dominguez testified that given Johnson's report of a hernia, she would have examined Johnson standing up and lying down; if she could not feel a hernia, she would then ask Johnson to strain or cough. During her examination, Dr. Dominguez found no presence of a hernia or abdominal bulge and determined that no treatment was required. Dr. Dominguez later treated Johnson six times for other medical issues between December 22, 2011, and April 10, 2012. Johnson did not complain about his hernia at any point during these visits.

Johnson next reported pain from a "lower abdominal hernia" on May 4, 2012, to a nurse at the Dixon healthcare unit. The nurse recorded a hernia, explaining that it was easily reducible[1] on exam, though noting that Johnson reported that it pops out while exercising. The nurse diagnosed Johnson with a bulge in the upper right quadrant of his abdomen and ordered a physician evaluation. Per that order, Dr. Dominguez again evaluated Johnson on May 8, 2012. Dr. Dominguez recorded that Johnson reported an upper quadrant abdominal hernia with tenderness and a bulge. But after examining

---

[1] An "easily reducible hernia" is one that "returns to its resting or natural position easily." R. 123 at 16.

Johnson while standing up and lying down, Dr. Dominguez could not feel a hernia. Dr. Dominguez then requested that defendant physician assistant Ava Valdez perform a separate exam, and physician assistant Valdez found questionable weakness on the left side of Johnson's abdominal wall. Dr. Dominguez diagnosed Johnson with a questionable left side abdominal hernia and prescribed an abdominal binder. At this time, Dr. Dominguez additionally noted that Johnson's diabetes was uncontrolled, and that Johnson was not reporting for his blood sugar checks twice a day.

On May 14, 2012, at Dr. Dominguez's request, defendant Dr. Arthur Funk assessed Johnson for a hernia. Johnson reported to Dr. Funk that he had abdominal pain with exertion for one year. Johnson also stated that he had an ultrasound at Cook County Jail, before his incarceration at Dixon, that showed a hernia. On physical examination, Dr. Funk could not find a hernia. He recorded that Johnson's abdomen was flat and soft, and that he detected no bulge. Dr. Funk initially approved Dr. Dominguez's request for an ultrasound, but that request was denied by defendants' employer for insufficient information. Dr. Funk requested and received information about Johnson's medical records from Cook County, including a CAT scan of Johnson's abdomen. The scan did not show a hernia. Although possible that a hernia would not show up on a CAT scan, Dr. Funk determined that no further imaging was necessary and advised Johnson to return to the healthcare unit if his pain worsened or if a bulge became visible.

Johnson next received evaluation for his hernia in October 2012 after he was referred by a nurse in the Dixon healthcare unit to physician assistant Valdez. Physician assistant Valdez

examined Johnson's abdomen, and explained that, while she was unsure, she may have felt a small bulge. She diagnosed a questionable small ventral hernia and ordered an abdominal binder.

Defendant nurse practitioner Susan Tuell began treating Johnson in August 2013 for diabetes management, and she subsequently treated Johnson for other medical issues in November and December of 2013. Nurse practitioner Tuell did not treat Johnson's hernia until April 2014 after Johnson reported that he lost his abdominal binder in segregation. When examining Johnson, she could not locate a hernia when Johnson was lying down, but she felt a two-to-three-centimeter bulge to the right of Johnson's bellybutton when Johnson stood that was tender with palpation. Nurse practitioner Tuell diagnosed Johnson with a right abdominal wall hernia that was small and stable. She ordered a replacement abdominal binder and 400 milligrams of Motrin for Johnson to take two or three times a day as needed. Nurse practitioner Tuell also told Johnson to avoid lifting heavy weights, particularly when not wearing his abdominal binder. Johnson saw nurse practitioner Tuell twice more for treatment of blood sugar issues and hypoglycemia in June 2014, but Johnson did not seek hernia treatment during these appointments.

Johnson next complained about hernia pain to nurse Christine Peppers on July 4, 2014. Nurse Peppers noted that Johnson was not wearing his abdominal binder and that Johnson reported that he was lifting weights. Nurse Peppers talked to Johnson about hernia reduction and using his abdominal binder, and she instructed Johnson to follow up if he experienced increased symptoms. Johnson followed up with nurse Cynthia Whitmer on August 19, 2014, complaining of

intermittent abdominal pain. Nurse Whitmer evaluated Johnson, noting that Johnson had a small right upper quadrant hernia that protruded slightly, though was reducible. Johnson's hernia was tender with palpation, and Johnson reported that his Motrin was only sometimes effective. Johnson advised he wore his abdominal binder at the gym, on the yard, and when sleeping. Nurse Whitmer instructed Johnson to avoid heavy lifting and to continue taking Motrin, and she scheduled Johnson for follow up with nurse practitioner Tuell.

Nurse practitioner Tuell saw Johnson on September 4, 2014. Johnson explained that he wore his abdominal binder but continued to lift weights up to 185 to 200 pounds, leading her to determine that he was noncompliant with medical orders. After examining Johnson's hernia, she determined that it had not changed in size or condition since her prior exam. Nurse practitioner Tuell told Johnson to avoid weightlifting more than ten to twenty pounds, while instructing Johnson to continue taking ibuprofen and wearing his abdominal binder. Johnson later saw nurse practitioner Tuell several times in November and December of 2014 for issues relating to his diabetes, but she did not treat Johnson's hernia during these visits.

For his part, Johnson asked defendants, and other Dixon medical staff, for surgery to repair his hernia starting at the time of his initial complaint in June 2011. Johnson reported that he subsequently asked each defendant for hernia surgery at various medical appointments in which defendants evaluated his hernia. Each defendant refused to refer him for surgery. Specifically, Johnson said that defendants told him that he would not receive surgery unless his hernia became

strangulated or incarcerated.[2] He also asserted that the over-the-counter pain medication and abdominal binder pre-scribed by defendants helped at times, but overall, it was not effective in managing his pain. Even with the abdominal binder and medication, Johnson reported that his hernia caused him pain while sleeping and walking. By the time of his deposition, Johnson rated his pain as a seven to eight on a ten-point scale, and sometimes as high as a twelve to fifteen.

Johnson sued Dr. Dominguez, Dr. Funk, physician assistant Valdez, and nurse practitioner Tuell under 42 U.S.C. § 1983, alleging that they were deliberately indifferent to his medical needs by not referring him for hernia surgery and engaging in a course of treatment known to be ineffective in violation of the Eighth Amendment. After Johnson and defendants were deposed, the district court granted Johnson's motion to appoint an expert witness and appointed Dr. Mark T. Toyama.

Dr. Toyama reviewed Johnson's medical records and concluded that Johnson had an umbilical hernia. In his expert letter, Dr. Toyama opined that the standard of care in treating a "medically fit" individual with an umbilical hernia is surgical repair. But when an umbilical hernia is not strangulated or incarcerated, Dr. Toyama noted that surgery is not urgent and usually scheduled as an elective procedure. Dr. Toyama explained that "elective repair would have been indicated when

---

[2] A strangulated hernia is a hernia in which the contents of the hernia itself have become compromised to a point that they have died. An incarcerated hernia is a hernia that is not reducible, which means you cannot push it in and out. See R. 127 at 6.

[Johnson] was medically fit and cleared for operation," which would include addressing Johnson's uncontrolled diabetes.

In his deposition, Dr. Toyama reiterated that Johnson's medical records showed no evidence that Johnson's hernia was strangulated or acutely incarcerated to require urgent surgery. Dr. Toyama also testified that Johson's medical records established that his hernia never changed significantly in size, that he continued to be physically active despite his hernia, and that he had difficulty controlling his diabetes. Dr. Toyama noted that Johnson's diabetes did "not necessarily" preclude surgical repair, but that delaying surgery could allow more time for a hernia complication to develop. When asked whether he had any criticisms of defendants' treatment, Dr. Toyama answered, "No."

Defendants moved for summary judgment, arguing that Johnson lacked evidence of a serious medical condition—that is, a hernia—because defendants never found objective medical evidence showing that Johnson had a hernia. Even if Johnson did have a hernia, defendants additionally contended that his hernia was not an objectively serious medical condition.[3] Separately, defendants argued that no evidence supported Johnson's claim that defendants acted deliberately indifferent to his medical condition by not referring him for hernia surgery.

The district court granted summary judgment in favor of defendants. In a thorough and carefully reasoned order, the district court first concluded there was a triable fact question

---

[3] On appeal, defendants do not renew their argument that Johnson lacked medical evidence of a hernia, nor their contention that Johnson's hernia was not an objectively serious medical condition.

concerning whether Johnson suffered from an objectively serious condition (i.e., a hernia or its resulting pain). Notwithstanding, the district court also held that defendants were not deliberately indifferent to Johnson's medical condition because no defendant consciously disregarded it. Johnson now appeals.

## II

We review a district court's grant of summary judgment de novo, construing all facts and drawing all reasonable inferences in the light most favorable to the non-moving party. See *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient." *Johnson v. Doughty*, 433 F.3d 1001, 1009–10 (7th Cir. 2006) (quotation and alteration omitted).

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 2021 WL 2644224, at *4 (7th Cir. 2021). Thus,

to prevail on a deliberate indifference claim, a plaintiff must show "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quotation omitted).

We assume without reaching that Johnson established a triable fact issue on the first prong of his deliberate indifference claim—whether Johnson's hernia, or its resulting pain, is an objectively serious medical condition. Cf. *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 521 (7th Cir. 2019) (noting that our cases have recognized that a hernia can be an objectively serious medical condition, and that in some cases, the chronic pain from a hernia may present a separate objectively serious medical condition). This appeal instead turns on whether defendants were deliberately indifferent to that condition. We agree with the district court that the record lacks evidence to support defendants' deliberate indifference with respect to Johnson's hernia and its resulting pain.

Deliberate indifference is a subjective standard, requiring that a defendant both "know [] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); see *Whiting*, 839 F.3d at 662. Though establishing deliberate indifference requires more than negligence, the plaintiff need not show purposeful conduct. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Stated differently, a plaintiff must establish that an "official knows of and disregards an excessive risk to inmate health or safety" or that "the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he draws the inference.'" *Id.* (alterations omitted) (quoting *Farmer*, 511 U.S. at 837).

In the inadequate medical care context, deliberate indifference does not equate to "medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth*, 532 F.3d at 679; see also *Johnson*, 433 F.3d at 1013 ("[I]t is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference."). And we must give medical professionals "a great deal of deference in their treatment decisions." *Wilson*, 932 F.3d at 519. Accordingly, "[a] constitutional violation exists only if no minimally competent professional would have so responded under those circumstances." *Id.* (quotation omitted). When a plaintiff's claim focuses on a medical professional's treatment decision, "the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

With these principles in mind, we cannot conclude that defendants were deliberately indifferent in treating Johnson's hernia. Johnson resists this conclusion, pressing three overlapping arguments that he believes show that a jury question remains concerning whether defendants were deliberately indifferent when treating his hernia: (1) defendants administered blatantly inappropriate medical care, (2) defendants failed to exercise their professional judgment and (3) defendants unnecessarily delayed medical treatment. These arguments find no support in this record.

To the contrary, the record shows that each defendant responded to Johnson's complaints and exercised their medical judgment in evaluating his hernia and reported pain. At the outset, Dr. Dominguez examined Johnson for a hernia but could not identify one. Even so, in response to Johnson's

medical complaints, she prescribed an abdominal binder. So did physician assistant Valdez who also had difficulty locating Johnson's hernia on examination. In addition, Dr. Dominguez referred Johnson to Dr. Funk for further evaluation. Dr. Funk too could not feel a hernia when he examined Johnson in 2012, and he reviewed the results of Johnson's prior medical imaging, which did not show a hernia.

We recognize that Johnson's complaints increased over time and he was ultimately diagnosed definitively with a hernia by Dixon medical staff, including by nurse practitioner Tuell in April 2014. But he received treatment for his hernia—just not the surgery that he desired. When Johnson reported intermittent hernia pain during medical visits, nurse practitioner Tuell prescribed over-the-counter pain medication to treat it and instructed Johnson on precautions to take to minimize his symptoms. And when Johnson continued to complain of pain, it was often accompanied by his admission that he continued to lift between 150 to 200 pounds without wearing his abdominal binder. Moreover, it is unrefuted that Johnson's hernia never changed in size and was never strangulated or incarcerated to require urgent surgery. The record, viewed in the light most favorable to Johnson, establishes that each defendant exercised their professional judgment in responding to Johnson's hernia. Johnson's ultimate disagreement with defendants' course of treatment provides no basis to support defendants' deliberate indifference. *Johnson*, 433 F.3d at 1013 ("mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to establish deliberate indifference).

Beyond Johnson's own disagreement with defendants' treatment, he argues that Dr. Toyama's expert opinion

supports that defendants medical care was blatantly inappropriate and lacked professional judgment. Dr. Toyama opined that the standard of care in treating an umbilical hernia in a medically fit individual is surgical repair, and that for Johnson, surgery would have been indicated when he was medically fit and cleared for an operation. Yet, in his opinion "medically fit" included obtaining control over Johnson's diabetes, and the record established that this was not the case. Further, when asked whether he had any criticisms of defendants' treatment, Dr. Toyama unequivocally answered, "No." Dr. Toyama's opinion does not support that defendants acted negligently, let alone that defendants acted with deliberate indifference. Although we have recognized that a departure from professional standards that is "so inadequate that it demonstrated an absence of professional judgment" could support deliberate indifference, *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 989 (7th Cir. 1998), Dr. Toyama's opinion falls far short of raising such inference.

Further, Johnson's contention that defendants' unnecessarily delayed medical treatment also finds no support in the record. We have recognized that "a significant delay in effective medical treatment … may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). But here, defendants did not "delay" referring Johnson for surgery—they determined a surgery referral was not appropriate. This determination, as discussed above, was not "blatantly inappropriate" or made in the absence of professional judgment. Johnson also invokes our recognition that a medical professional's decision to proceed with an "easier" treatment course known to be ineffective can evidence deliberate indifference. *Johnson* 433 F.3d at 1013. Yet the evidence

here does not bear out this assertion. To be sure, Johnson complained of hernia pain intermittently over the course of several years to Dixon medical staff. While defendants continued with non-surgical treatment, they repeatedly instructed Johnson to follow up if his hernia changed in size or his symptoms worsened. And, as discussed above, it is unrefuted that Johnson's hernia did not change significantly in size and remained reducible. While at the time of his deposition Johnson reported his hernia pain to be as high as a twelve to fifteen on a ten-point scale, he failed to connect this evidence to defendants' treatment during the relevant time period. The evidence simply does not show that defendants persisted in treatment that they knew to be ineffective.

Lastly, Johnson's contention that defendants operated pursuant to a policy of refusing all non-emergent hernia surgeries regardless of their impairment was not developed before the district court. As a result, this argument is waived, and we do not consider it here. See *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are not raised or developed before the district court are waived).

AFFIRMED