NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 15, 2021[*]
Decided October 20, 2021

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2567

| | |
|---|---|
| DANNY R. RICHARDS,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:18-cv-00165-JPH-DLP |
| WEXFORD OF INDIANA LLC, et al.,<br>    *Defendants-Appellees*. | James P. Hanlon,<br>*Judge*. |

**O R D E R**

Danny Richards, an Indiana inmate, sued three prison doctors and their employers under 42 U.S.C. § 1983 for deliberate indifference to his serious health needs. The district court entered summary judgment for the defendants. But a fact question

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

remains over whether one doctor conducted a rectal exam in a way that violated Richards's rights, so we vacate the judgment on that issue. Otherwise, we affirm.

**I**

**A**

While incarcerated at the Wabash Valley Correctional Facility, Richards sought medical care for both diabetes and ulcerative colitis. Corizon Health was the contracted healthcare provider for the Indiana Department of Correction until March 2017, when Wexford of Indiana took over. We recount the facts about the treatment in the light most favorable to Richards. *See Thomas v. Martija*, 991 F.3d 763, 767 (7th Cir. 2021).

Dr. Jackie West-Denning began treating Richards for diabetes in December 2017. Based on his "alarmingly high" blood glucose levels, she ordered insulin injections and daily blood glucose tests. When she saw him a month later, however, his blood sugar was still high. Richards was experiencing painful side effects from the insulin injections, and so he accepted the injections only when his blood sugar was over 150. Dr. West-Denning explained that the side effects would fade once his body acclimated to the insulin in four to eight weeks and that he should "deal with it" because he "is a big boy." At his next visit, Richards again reported pain from the injections. But based on his unstable blood glucose levels, Dr. West-Denning increased his dose. Finally, in May 2018, Dr. West-Denning discontinued the insulin shots because of Richards's non-compliance, but she continued to counsel Richards on his diabetes, which stabilized.

For his ulcerative colitis, Richards had previously undergone abdominal surgeries—from which Dr. West-Denning did not have complete records—but he continued to report symptoms including excessive bowel movements. In February 2018, Dr. West-Denning discontinued a prescription for gabapentin (an anticonvulsant used for nerve pain) that a previous provider had issued for his rectal pain. Instead, she ordered an anti-inflammatory medication (sulfasalazine) and suppositories. When Richards protested, Dr. West-Denning explained that the Department of Correction had restricted the drug because of abuse and trafficking. She thought that the new drug would treat his underlying condition and help with the pain, which she did not believe was nerve pain. (She also had concerns about giving gabapentin—a drug that she said was potentially habit-forming—to someone like Richards with a history of self-harm.)

At the same appointment, which took place in Richards's restricted housing unit, Dr. West-Denning performed a rectal exam in a cramped room that, Richards says, lacked privacy and was filthy. According to Richards, correctional officers also were present in the room for security purposes. And, by Richards's account, two other

officers and three inmates, from outside the exam room, were able to see through a window into the room as Dr. West-Denning performed the rectal exam. The exam table, Richards adduced, was sticky, and there were bloody cotton balls and bandages on the floor. Richards protested; he requested privacy and asked the doctor to clean the exam table. Instead, Dr. West-Denning retorted that Richards "lost his right to privacy and cleanliness when he came to prison." She gave him the option to refuse the exam or "get undress[ed]." He acquiesced but found it "humiliat[ing]." When he told her as much, Dr. West-Denning "just smiled" and ended the visit.

Richards continued to report rectal pain and frequent bowel movements. He repeatedly asked for a prescription that would treat what he believed was rectal nerve pain and reported that the suppositories burned. Dr. West-Denning urged him to wait eight weeks for the sulfasalazine to take effect and reordered a zinc oxide cream for his irritated skin. When he again complained of abnormal bowel movements, Dr. West-Denning ordered steroids, which Richards initially refused to take, and added another anti-inflammatory drug. In late March, Dr. West-Denning prescribed a different anticonvulsant (oxcarbazepine) for the nerve pain. At that time, she also ordered antibiotics, a stool stabilizer, and steroids along with various tests.

In 2018, Richards filed three grievances about allegedly inadequate medical treatment: In February, he complained that Dr. West-Denning wrongly discontinued his prescription for nerve pain; in March, he asserted that a healthcare administrator, who is not a defendant, refused to tell him the side-effects of his steroids; and in June (after he filed this lawsuit), he faulted Dr. West-Denning for ignoring the pain that his insulin injections caused. None of the grievances was sustained.

Turning to federal court, Richards sued Dr. West-Denning, two other doctors (Mary Chavez and Samuel Byrd), Corizon, and Wexford for deliberate indifference to his serious health needs. As relevant to this appeal, he alleged that Dr. West-Denning disregarded his pain caused by his ulcerative colitis and insulin injections; that Dr. Chavez and Dr. Byrd failed to diagnose, treat, or recommend a specialist for his diabetes and acid reflux; and that Wexford and Corizon had an unconstitutional policy of providing cheaper medication when more effective medication was available.

B

The district court allowed the claims to proceed, 28 U.S.C. § 1915A, and Richards also moved for the recruitment of counsel. The court denied his first request because he had not shown reasonable efforts to obtain counsel independently. In denying the subsequent motions, the court explained that Richards demonstrated competence to litigate: The claims involved his personal experience, and his stated difficulties with

comprehension had not limited his ability to litigate any more than the average prisoner; he had competently responded to filings and managed the discovery process.

In three groups, the defendants moved for summary judgment, and the district court granted each motion. First, the court determined that Richards had not exhausted the prison's administrative remedies against Dr. Chavez, her employer, Corizon, and Dr. Byrd (who worked for both Corizon and later Wexford). *See* 42 U.S.C. § 1997e(a). None of his grievances was filed while Corizon was the prison's healthcare provider, and none mentioned those defendants nor the allegations against them. Second, the court concluded, as relevant to this appeal, that no reasonable jury could find that Dr. West-Denning displayed deliberate indifference to Richards's pain from his ulcerative colitis or insulin injections. Nor did he support his contention that her employer, Wexford, had a policy of withholding effective but expensive treatment such as gabapentin.

Richards appeals.

## II

### A

Richards first argues that he raised a genuine dispute about whether Dr. West-Denning performed a rectal exam in a manner designed to humiliate him. To be sure, he is not challenging Dr. West-Denning's determination that the rectal exam was medically necessary. Rather, Richards contends that by gratuitously exposing him to others, performing the exam in a filthy room, and making demeaning comments, Dr. West-Denning engaged in demeaning and degrading conduct that violated the Eighth Amendment.

It is true that Richards's amended complaint did not contain factual allegations about the February 2018 rectal exam. But Richards did focus on this event as part of his opposition to the defendants' motion for summary judgment, and the defendants replied on the merits. All of this led to the district court, in turn, addressing the substance of the allegations on the merits. In these circumstances, we see the merits of this issue as within the scope of the deliberate indifference claim litigated at summary judgment. Thus, on this record, the claim is properly on appeal. *See, e.g., Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 878–79 (7th Cir. 2005) (determining that the parties litigated the claims at issue on appeal by implied consent in the course of the proceedings in the district court).

On the merits, we agree with Richards that he raised a genuine issue of a material fact about whether Dr. West-Denning sought to humiliate him by performing

the rectal exam after he raised privacy and sanitary concerns. The Eighth Amendment bars the "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Perhaps the best analogy is to strip searches. They are permitted when justified by penological interest, but must not be executed in a manner that gratuitously causes humiliation. *See Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009) (concluding that a genuine dispute existed over whether public strip searches held in a cold room with guards who did not change their gloves and made demeaning comments "were conducted in a harassing manner intended to humiliate").

Furthermore, Richards submitted evidence that Dr. West-Denning taunted him when he asked for privacy and for her to clean the sticky exam table, telling him that he "lost his right to privacy and cleanliness when he came to prison." Assuming the comment was made (as we must, at this stage of the proceedings), it is some evidence of deliberate indifference to the humiliating conditions. Coupled with the sensitive nature of the exam, the conduct could rise to the kind of torment and humiliation without a penological (or medical) purpose that can violate the Eighth Amendment. *Mays*, 575 F.3d at 649; *see Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (concluding that touching "intended to humiliate the victim or gratify the assailant's sexual desires" during search created triable claim).

B

Richards also maintains that the district court wrongly entered summary judgment on his claim that Dr. West-Denning disregarded the pain caused by his ulcerative colitis and insulin injections. For this claim to survive summary judgment, Richards needed evidence that Dr. West-Denning knew of, but recklessly disregarded, an excessive risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Concerning the pain from the insulin injections, Richards offered no evidence that Dr. West-Denning acted recklessly or worse by continuing to prescribe the shots despite the negative side effects he reported. First, arguably unprofessional comments (such as being told to be a "big boy," here), without more, generally do not violate a prisoner's constitutional rights. *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). Neither her statement nor her order to increase the insulin dosage signal a failure to exercise her medical judgment; she prescribed insulin and adjusted the dose to treat his "abnormally high" blood sugar and counseled him that the side effects should subside in a few weeks. Doctors are entitled to deference in their decision-making, and Richards presented no evidence that Dr. West-Denning's actions reflected a substantial departure from accepted professional standards. *See Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (citing cases). In fact, Richards's diabetes stabilized while under her care.

C

Richards next argues that by failing to prescribe a medication that specifically addressed nerve pain for nearly two months, Dr. West-Denning impermissibly persisted in an ineffective course of treatment. But Richards, again, points to no evidence from which a reasonable jury could conclude that the doctor failed to use her professional judgment. *Id*. First, the undisputed facts show that Dr. West-Denning believed that she was following the Department of Correction's policy of reducing prescriptions for a frequently trafficked drug and that she thought that gabapentin was a bad idea for Richards specifically. Second, the doctor took action to address Richards's pain differently. *See Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). She ordered medication that she thought would address the underlying condition, ulcerative colitis, and reduce his pain. At most, the record shows that Dr. West-Denning disagreed with a previous provider about the best course of treatment. But a reasonable difference of opinion between medical professionals is not evidence of deliberate indifference. *See id.* at 1023. And, although Richards preferred gabapentin, the Constitution entitles Richards to adequate medical care, not to demand specific medication. *See id*. at 1024.

D

Turning to the other defendants, we agree with the district court's conclusion that Richards did not exhaust his administrative remedies with respect to the claims against Dr. Byrd, Dr. Chavez, and Corizon. Richards had to follow the Indiana Department of Correction's Offender Grievance Process, *see Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006), which required that he file one grievance per "event or issue" and that each grievance explain "how the situation or incident affects" him and "suggest appropriate relief or remedy." IND. DEP'T CORR., POL'Y & ADMIN. PROCS. No. 00-02-301 § XI(A)(5), (7), (11). He also had to file a formal written grievance within 20 days of the complained-of incident. *Id*. No. 00-02-301 § XI. The three grievances in the record describe events that occurred almost a year after Dr. Chavez and Corizon stopped providing medical care at the prison. They do not describe incidents or treatment decisions involving Corizon, Dr. Chavez, or Dr. Byrd. Therefore, these grievances did not provide the prison notice of, or the opportunity to correct, any mistake by these defendants. *See Woodford*, 548 U.S. at 89.

To the extent that Richards now responds that the administrative process was not available to him in time to file a timely grievance, or that the prison prevented him from doing so, he waived those arguments by not raising them in response to the summary-judgment motions. *See Fenster v. Tepfer & Spitz, Ltd*., 301 F.3d 851, 859 (7th Cir. 2002).

E

As for Wexford, the state's current prison healthcare contractor, Richards asserted in his complaint, and argued in the district court, that he was injured by an unconstitutional policy or practice of prioritizing cost-savings over effective treatment, namely gabapentin. *See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But he provided no evidence, beyond speculation, that any such policy or practice existed, or caused him to receive constitutionally deficient medical care for his pain. *See Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012). On appeal, Richards contends that treatment records were falsified and makes other arguments unrelated to the supposed prioritization of cost-effectiveness, so he gives us no reason to question the district court's ruling.

F

Finally, Richards challenges the denial of his multiple motions for the recruitment of counsel. But the district court did not abuse its discretion when it denied these requests. The court followed the parameters of *Pruitt v. Mote*, first by requiring Richards to independently seek representation, then by reasonably weighing Richards's abilities against the difficulty of the case. 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). Further, on appeal, Richards does not point to any prejudice besides difficulty navigating the discovery process. *See id.* at 660. And he does not explain how he might have disputed the evidence of adequate treatment for his medical conditions.

We have considered Richards's other arguments, and none has merit. Therefore, we VACATE the judgment as it concerns the way the rectal exam was conducted and REMAND for further proceedings. We otherwise AFFIRM.