NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 1, 2022[*]
Decided April 4, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1393

| | |
|---|---|
| LAMAR COOPER, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 17-1556 |
| | |
| ANDREW TILDEN, | Sue E. Myerscough, |
| *Defendant-Appellee.* | *Judge.* |

## O R D E R

Lamar Cooper, an Illinois inmate at Pontiac Correctional Center, contends that a prison doctor, Andrew Tilden, consciously ignored problems with his incision from a previous surgery and thereby violated the Eighth Amendment. *See* 42 U.S.C. § 1983. The district court entered summary judgment for Dr. Tilden, ruling that the undisputed

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

evidence established that the care the doctor provided for the incision fell within the bounds of professional judgment. This analysis is correct, and we affirm.

In reviewing summary judgment, we recite the facts in the light most favorable to Cooper. *See Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021). Dr. Tilden examined Cooper in April 2015 after he complained of pain at the site of an old surgical incision on his chest. (The incision arose from surgeries that Cooper received years earlier after he was shot. During those surgeries, Cooper's chest was opened, metal wires were inserted to hold his sternum together, and the incision was closed with sutures.) Dr. Tilden observed some drainage from the incision. Cooper asked Dr. Tilden if he could see a specialist because he worried that a foreign body was in the wound, as had happened once before, and that he was at risk for a serious infection. Seeing no foreign body, Dr. Tilden denied the request. But he prescribed an antibiotic to prevent possible infection, limited Cooper to light-duty work, and ordered a chest x-ray to examine more closely the sternal wires. The x-ray showed Cooper's sternal wires remained in place.

In the following months, medical staff continued to monitor Cooper's incision. They treated it with an antibiotic and pain medicine, although they did not report seeing any foreign body in the wound. (They also gave him an antifungal cream.) Cooper insisted that the wound required more treatment—particularly an MRI—to resolve lingering pain and identify any foreign body. He received more x-rays, but when they showed no presence of a foreign body, the medical staff denied his requests for an MRI.

Seven months after Cooper's first visit with Dr. Tilden, the doctor saw him again to respond to Cooper's complaint that something was protruding from his incision. Upon visual examination, Dr. Tilden thought it possible that a small opening at the wound revealed a tiny object that Cooper had pulled up. To investigate whether this object was something that required removal, he ordered another chest x-ray. It showed that Cooper's sternal wires remained in place (a radiologist reported post-surgery "changes" but nothing "acute") and that nothing needed removal.

Two months later, Dr. Tilden detected and removed protruding sutures. At that time, staff had reported seeing an old suture rising out of Cooper's chest. Dr. Tilden examined Cooper's chest, and he thought that a suture might have worked its way to the surface. He prescribed an antibiotic, an antifungal cream, and a chest x-ray. Based on the x-ray, which confirmed a protruding suture, Dr. Tilden removed it three days later. (Cooper asserts that Dr. Tilden removed two sutures, each four inches long.)

Cooper sued Dr. Tilden, accusing him of deliberately ignoring Cooper's problems with his chest incision in violation of the Eighth Amendment. *See* 42 U.S.C § 1983. Dr. Tilden moved for summary judgment, which the judge entered. The judge ruled that Dr. Tilden delivered appropriate care by repeatedly examining Cooper, prescribing suitable medication, ordering x-rays, and ultimately removing the sutures once they protruded.

To overcome summary judgment on his deliberate-indifference claims, Cooper had to supply evidence from which a reasonable jury could find that he faced a substantial risk of harm from a serious medical condition and that Dr. Tilden consciously disregarded the risk. *See Farmer v. Brennan*, 511 U.S. 825, 829 (1994).

Cooper argues that the judge ignored three facts that Cooper believes justify a trial. First, he insists that Dr. Tilden contradicted himself—creating a fact dispute—by saying (when he removed the suture) that sutures can work their way to the skin's surface and by saying earlier that Cooper could pull them up himself. But the cause of the sutures' eventual exposure is immaterial to whether Dr. Tilden acted reasonably. And the undisputed evidence—that he monitored the wound visually and with x-rays; treated Cooper's complaints about it with light-duty work, pain medicine, and antibiotics; and removed sutures when an x-ray revealed that they had surfaced— shows that he did. *See Johnson*, 5 F.4th at 826. Second, Cooper contends that the antifungal cream was for his feet, not his chest. But again, this dispute is immaterial to the conclusion that Dr. Tilden reasonably treated the wound. Third, Cooper contends that the judge ignored websites and medical reports that he cited. But they too are immaterial. They addressed recent surgeries (which Cooper's surgery was not); chest inflammation (which Cooper never asserts he had); and the need for diagnostic x-rays (which Cooper received). This evidence thus differs from the evidence in *Rivera v. Gupta*, 836 F.3d 839, 841–42 (7th Cir. 2016), a case on which Cooper relies, in which the plaintiff cited medical evidence about his specific medical ailments.

Finally, Cooper argues that the two months it took Dr. Tilden to remove the sutures after he noticed a possible protrusion in Cooper's chest reflects deliberate indifference. We disagree. Dr. Tilden reasonably decided against removing anything on the earlier date because he ordered an x-ray to examine the wound and a radiologist reported no "acute" changes necessitating action then. When Dr. Tilden was alerted two months later to another possible protrusion, he again ordered an x-ray, and this time, after the x-ray confirmed the protrusion, he appropriately removed exposed sutures.

Though this was not Cooper's preferred treatment, he supplied no evidence that the treatment he received was "blatantly inappropriate" or otherwise violated the Eighth Amendment. *Johnson*, 5 F.4th at 826 (quotations omitted).

AFFIRMED